Phillips *v.* Reeder and Prior.

PHILLIPS *vs.* REEDER AND PRIOR.*

1. If R. enters into a partnership with P. to continue for three years, and so much longer as R. should continue lessee of the stone quarries leased to him by M., and at the expiration of the lease, R. refuses to renew the lease with M., it having a covenant for renewal at his option, the partnership expires with the lease. R. was not bound to renew the lease and continue the partnership, if not expressly bound so to do by the partnership agreement.

2. If articles of partnership provide for its continuance during the existence of a lease, renewable at the option of one of the partners, it is at the option of such partner to continue the partnership by renewing the lease, or to end it by refusing to renew. He has a right to refuse to renew for the purpose of ending the partnership.

3. That a partner, having the option to renew such lease and continue the partnership, may have talked and acted as if he intended so to do, will not bind him to renew if he made no contract to do it.

4. Upon the dissolution of a partnership, in which the articles provided that the effects, on dissolution, were to be equally divided among the partners, the property and effects of the firm belong to the individuals who composed it, as tenants in common; part of the former members of the firm cannot dispose of the property of any other member, without his consent.

5. If some of the members of a dissolved partnership dispose of the property of one of the partners, without his consent, he may, at his option, call on them to account for its value.

6. In many cases, if some of the partners, after dissolution, continue the business with the property of the late firm, the retiring partner will be entitled to call on them for a share of the profits, as well as for his capital.

* CITED *in* Ruckman v. Decker, 8 C. E. Gr. 288.

7. But this principle will not be applied to a case where the chief contribution to the business was personal skill and labor, and a new partnership was formed with strangers, merely because some of the property of the retiring partner was used in the new business, after being sold to the new firm by the continuing partners, without authority so to sell it.

8. A majority of the partners of a firm that is dissolved, have no right, without judicial proceedings, to compel another partner to sell or divide the property, or to choose an appraiser for the purpose of valuation, or if he refuses, to choose appraisers themselves, and purchase or sell his share at such valuation. But if they have appropriated or sold the property, they must account to him for the real value of his share and interest therein.

*Mr. Aitkin* and *Mr. J. Wilson*, for complainant.

*Mr. Richey*, for defendants.

THE CHANCELLOR.

The complainant, Benjamin D. Phillips, entered into partnership with the defendants, Charles Reeder and Samuel Prior, by written articles, under the hands and seals of the parties, dated the 15th day of December, 1860. The partnership was to commence from the date, and to continue for three years, and so much longer as the defendants should continue lessees, under the lease then existing, of three stone quarries, leased to them by Cornelius V. Moore. That lease was dated October 30th, 1860, and was for the term of three years, from January 1st, 1861, with a right of renewal, at the option of the lessees, upon their having performed the covenants therein. The business of the partnership was to furnish stone for building, and to cut stone to order, and for sale. The lease from Moore was not renewed by the defendants, but they elected, before its expiration, to take a new lease from the heirs of Moore, he having died. This new lease was for only two of the three quarries, and was on terms materially different from the first lease.

The defendants insisted that the partnership expired by its own limitation, contained in the articles by which it was constituted. The three years had expired on December 15th,

1863, and their term, under the Moore lease, ended January 1st, 1864; when they practically put an end to the partnership, and formed a new one, with Albert K. Reeder, the son of Charles Reeder, and Thomas H. Prior, the son of Samuel Prior, to carry on a like business.

The complainant insisted that the partnership was not ended on the first day of January, 1864; that it was a partnership for six years, or for the term for which the Moore lease could have been renewed; that this lease virtually belonged to the firm, and the defendants were bound to renew it for the benefit of the firm; that the taking a new lease for part was designed to evade their contract with him, was a fraud upon him, and that they must be considered to hold it in trust for the firm, and that the partnership therefore continued.

Under this insistment, on the first of January, 1864, he declined to enter into any negotiation with them for the division or sale of the partnership property. They had it appraised, gave him the inventory and appraisement, and offered to divide it by the appraisement, to let him take one third, and they retain two thirds. They offered that he might buy their two thirds at these prices, or that they would buy his third at the same. He, believing that he was entitled to continue in the partnership, refused to assent to any of these offers, and thereupon the defendants sold all the partnership stock, at the appraisement, to the new firm, having first given the complainant notice that they would do it.

The complainant, on the 20th day of February, 1864, filed his bill to have the partnership declared to be still in existence, and to compel the defendants to go on with him as a partner, and for an account of the property and profits of the firm made, and to be made; or, if the partnership should be held dissolved, for an account of the property and profits of the firm, including the profits on all contracts entered into before the dissolution, although executed afterwards.

The first question to be decided is, did the partnership terminate on the 1st of January, 1864? The term of three

years had expired, and the lease from C. V. Moore terminated on that day. By the terms of the articles the partnership ended on that day. The complainant contends that the partnership was intended to extend over the whole term to which the Moore lease could be renewed; that the lease belonged to the firm, and it was the duty of the defendants to have renewed it for the term provided.

But this lease did not belong to the firm, either at law or equitably. The articles of partnership do not so provide, either expressly or by implication; on the contrary, they expressly provide that the defendants shall continue to work the quarries, and furnish the firm with all the stone quarried there at cost. The provision of the lease against assignment, and the aversion of Moore to Phillips, presented a bar to its belonging to the firm. The articles might have obliged the defendants to renew that lease. They do not so provide, and this court cannot add to them any additional provision, especially when the discussions between the parties about the term of the partnership, whether for six years or three years, must have suggested to them and their counsel the propriety of such a provision, if it had been intended. As the term of the partnership was made to depend upon the renewal of a lease, which the defendants could renew or not at their option, it must be construed to be for three years, and to be extended for three years longer, at the option of the defendants. If the defendants had refused to renew this lease expressly for the purpose of ending the partnership, to get rid of the complainant as a partner, and to take their own sons in his stead, they had the right to do it.

The fact that during any part or the whole of the partnership they may have expected to renew the lease and continue the partnership, and may have so said and acted, will not take away their right to exercise their choice, unless what they said or did amounted to a new contract with the complainant. There is no proof of anything like this. The partnership between the complainant and the defendants, must be held to have expired on the first day of January, 1864.

By the articles, it was provided that the effects, on dissolution, were to be equally divided among the partners, one third to each. After that, the defendants had no right to, or power over, the complainant's one third. They were merely tenants in common; neither could set off or sell the share of the other, without his consent. The sale, therefore, made by the defendants to the new firm, is not valid as far as the interest of the complainant is concerned. In this suit there can be no recovery against the new firm, as they are not parties. But the defendants have undertaken to sell and dispose of the interest of the complainant, and, therefore, they may be held to account for it. They must account to him, not at a value fixed by themselves, or appraisers chosen by them, but at the real value, to be ascertained by evidence, on a reference to a master.

The complainant claims a right to his share of the profits made by the new firm, on the ground that the business was continued with the stock and capital of the old firm, and that his property was put to risk in making these profits.

There is a series of cases to sustain the principle, that where one or more of the partners of a firm continue the business, after the partnership has been dissolved by death or otherwise, the retiring partner, or the legal representatives of the deceased partner, are entitled to his share of the profits made after dissolution. 3 *Kent* 64; *Collyer on Part.*, § 324; *Story on Part.*, § 329, 342; *Lindley on Part.*, (93 *Law Lib.*) [830] to [837]; *Brown* v. *Litton*, 1 *P. W.* 140; *Hammond* v. *Douglas*, 5 *Ves.* 539; *Crawshay* v. *Collins*, 15 *Ves.* 218; *S. C.*, 1 *Jac. & W.* 267; *S. C.*, 2 *Russ.* 325; *Featherstonhaugh* v. *Fenwick*, 17 *Ves.* 298; *Brown* v. *De Tastet*, *Jacob* 284; *Wedderburn* v. *Wedderburn*, 2 *Keen* 722; *Palmer* v. *Mitchell*, 2 *M. & K.* 672; *Stockton* v. *Dawson*, 9 *Beav.* 239; *Featherstonhaugh* v. *Turner*, 25 *Beav.* 382; *Simpson* v. *Chapman*, 4 *De G., Mac. & G.* 154; *Stoughton* v. *Lynch*, 1 *Johns. C. R.* 467.

But the application of this principle could hardly be made

in the present case; there are many limitations and qualifications to it, and it is always applied " with just allowances."

In a case like this, where the main contribution to the success of the firm by each partner, was his skill, time, and diligence, which each contracted to devote exclusively to the business, it would be difficult, if not impossible, to decide what allowance ought to be made for the skill and services of the two new partners, and what deduction for the want of the skill and services of the complainant. The later authorities limit the application of the rule.

Again, this doctrine of the equity courts was intended as a penalty, to hold to strict account, in the most severe manner, executors and others, who go on wantonly trading with the capital of others in no laches or fault. In this case, it would be a severe penalty to base an account on that principle. The defendants, in this case, made offers that the complainant ought to have accepted. They asked him to divide the property according to the agreement in the articles; this division it was his right to have; it was equally his duty to them, to make it. They requested him to join in selecting fair and competent men to appraise the property; this also he refused. When they had an appraisement made, they offered to buy his one third, or to sell their two thirds by it; this he refused. He thought the partnership was not ended; he mistook his rights, and therefore refused to do what he ought to have done. Under these circumstances, the defendants undertook to sell, by an appraisement which they supposed to be fair. They also mistook their rights, or rather their power. Under these circumstances, it would be unfair to inflict a penalty on the defendants by making them share the product of their skill and diligence with one who was in no way, either at law or in equity, or in conscience, a partner, because they made a mistake in the proper mode of transferring the title to the partnership property.

The complainant is not entitled to any account of profits earned since January 1st, 1864, but he is entitled to interest

from that day, on the amount found to be then due to him from the assets of the firm.

Let an order be made referring it to a master to take an account on these principles.