ROSE SOROKACH, AS EXECUTRIX OF THE ESTATE OF
ALEXANDER SOROKACH, DECEASED, PLAINTIFF-AP-
PELLANT, v. WILLIAM TRUSEWICH, *ET AL.*, CO-
PARTNERS TRADING AS ARROW CLOTHING COM-
PANY AND AS ARROW COAT & SUIT CO., DEFEND-
ANTS-RESPONDENTS.

Argued September 12, 1953—Decided October 13, 1953.

*Mr. Leopold Frankel* argued the cause for appellant (*Messrs. Frankel & Frankel,* attorneys).

*Mr. James A. Major* argued the cause for respondents (*Mr. Henry L. Janowski,* attorney).

The opinion of the court was delivered by

WACHENFELD, J. The plaintiff instituted this action as executrix of her husband's estate, seeking a determination and payment of his share of the assets of a partnership of which he was a member in his lifetime. He was formerly a stockholder of the corporation formed in 1932 bearing the name Arrow Clothing Co., Inc., having six equal shareholders. The corporation was dissolved in 1943 and a partnership was formed known as the Arrow Clothing Company, consisting of the former shareholders as equal partners, carrying on the same business as the predecessor corporation.

On December 8, 1943 two agreements were signed by the partners, one a partnership agreement, the other an insurance agreement retroactive to June 1, 1943.

The Arrow Coat & Suit Company was organized in 1948 and was subject to the same agreements. Although separate books were kept, the business was treated as one entity, both partnerships engaged in performing labor and adding accessories to materials furnished by their customers, the first making men's clothing and the latter women's clothing.

The plaintiff's husband died October 1, 1950, possessed of a one-sixth interest in both partnerships. After his death the surviving partners continued the two enterprises and the plaintiff qualified as executrix on October 19, 1950.

The agreements will again be referred to, but generally provide, amongst other things, that full, just, true and accurate accounts were to be kept; that the life of each partner was to be insured for $10,000 with the partnership as sole beneficiary; that premiums were to be charged as an expense of the business; that upon dissolution before death of any partner, the life insurance policy was to become the property of each partner; that upon the death of any partner and within 30 days thereafter, an audit of the books was to be made and inventory taken and net worth or value of the deceased partner's interest determined; that in the event of death, the enterprise was to continue and no value was to be placed on good will in determining the net worth of the partner; that the interest of the decedent partner

was to be paid within 30 days; that upon payment of the sum determined as above, release was to be made by personal representatives of the partner's interest in all the assets, including good will and trade name.

As· of September 30, 1950 the book value of a one-sixth interest was $12,493.71. To this figure the remaining partners added the amount of inventory and offered the plaintiff $14,000. It was refused and litigation was instituted. She was awarded $13,112.52, the Chancery Division determining, in part, that the machinery should be valued in accordance with the amount appearing in the books of the company, which amount represented cost less depreciation. The court rejected the plaintiff's suggestion that the machinery be given its market value.

As to profits, it decided the plaintiff was not entitled to a share of them because the partnership agreement provided otherwise, the conclusion being that because of the deceased partner's illness and his consequent inability to work, he was not entitled to share in the profits of the company after the distribution of June 30, 1950.

The Appellate Division affirmed *in toto* in a *per. curiam* opinion, but a dissent was filed relating solely to the question of the valuation of the equipment, concluding the machinery should be given its fair market value and not its book value.

The appeal is taken as a matter of right under our *Constitution of* 1947, *Article* VI, *Sec.* V, *par.* 1, which provides, *inter alia,* that appeals may be taken to the Supreme Court "(b) In causes where there is a dissent in the Appellate Division * * *," and under *Rule* 1:2–1(*b*), now *R. R.* 1:2–1(*b*). The query is made whether, under these circumstances, the single question on which the Appellate Division divided is presented for review and consideration or whether the entire cause and all matters involved may be re-adjudicated.

██ Limitations in this respect are encountered where the case comes here by way of certification, as we have held it is there confined to the specific questions certified. *Liberty*

*Title & Trust Co. v. Plews*, 6 *N. J.* 28 (1950). Where the appeal is one of right because of the presence of a constitutional question, the result is otherwise and this court will consider all questions presented by way of cross-appeal, even though they are not such as in and of themselves would give the right to an original appeal under *Rule* 1:2–1. *Frank v. Frank,* 7 *N. J.* 225 (1951).

Similarly, we conclude in the present case all the questions raised must be decided. The Constitution and our rules do not restrict the reconsideration to the question concerning which there is a dissent, but give the right of appeal "in the cause" when this event occurs. The appeal under the constitutional provision is from the judgment and not from a portion of the respective opinions rendered. Accordingly, the appellant has the right to have all the issues raised considered and disposed of in the present appeal.

Considering the points raised in the inverse order of their presentation, we meet first the question of profits. As the appellant aptly states in her brief: "The issue in this case is whether the defendants may deny the plaintiff the rights given her under the two agreements to which her husband was a party."

With this we agree, but the appellant abandons the contracts upon which she implied she would rely and turns to the Uniform Partnership Act, *R. S.* 42:1–42, claiming under it the right to election of profits. A mere reading of this section of the act makes it quite apparent that the rights and privileges therein outlined never mature or come into being if the parties have "otherwise agreed."

The primary inquiry, therefore, is: Did the parties agree in their written contracts on the point in controversy, and if so, what was their agreement?

Paragraph 4(a) of the partnership agreement reads:

"Each partner shall be entitled during the calendar year to thirty days' sick leave with full pay, either consecutive or intermittent, and after which he shall not be entitled to participate in any profits of the partnership until he shall return to active participation in the partnership business."

Mr. Sorokach, the deceased partner, for months prior to his death had been unable to perform services or engage in the partnership business because of illness. His sick leave under the contract was exhausted and expired on June 30, 1950. His right to profits during his lifetime was determined by his own contract. He was entitled, under his agreement, to 30 days' sick leave with full pay and no more. Thereafter he was barred from participating in any profits until he returned "to active participation in the partnership business." This admittedly he never did. The right which he lost during his lifetime by the terms of the contract was not revived or recreated by reason of his death. The agreement barred profits in his lifetime and his death did not restore them. Both the trial court and the Appellate Division so found and we are in accord.

The appellant, after examining the books of account, determined her late husband's interest to be in a sum considerably larger than that awarded below. The main discrepancy in the figures was occasioned by the appellant's accountant valuing the machinery at market value rather than book value as shown on the surviving partners' accounts.

At the trial level, the court determined the machinery should be valued in accordance with the amount appearing in the books of the company, which represented cost less depreciation, rejecting the market value suggestion upon the theory that the deceased partner agreed to the accounting methods of the partnership in his lifetime, made no complaint about the figure at which the machinery was carried on the books during this period, and therefore consented to it and his representative could not now, after his death, complain.

The dissenting opinion related solely to the question of the value of the machinery and concluded that the assets, such as machinery and equipment, should be given their fair market value as contrasted with their book value, reliance being placed upon *Hollister v. Fiedler*, 22 *N. J. Super.* 439 (*App. Div.* 1953). Merely because the insurance agreement required an audit of the books be made and an inventory taken

did not evidence an intention that the deceased partner's interest in tangible assets disclosed by the inventory should be ascertained by the value at which the assets were carried on the books. Determining the market value should be established, the opinion concludes: "Such, in my opinion, was the intention of the parties to the agreement."

The ninth paragraph of the partnership agreement, referring to the event of death of any partner, provides: "The interest of such partner shall be determined * * *," and then specifically excludes good will in such determination. The third paragraph of the supplemental insurance agreement provides: "Upon the death of any of said partners and within thirty days thereafter, an audit of the books of the partnership shall be made and an inventory taken for the purpose of determining the net worth or value of the deceased partner's interest."

▮▮▮ Normally, fair market value is the criterion in determining value. The insurance agreement specifically provided the "net worth or value" should be determined, and we think this fairly implies the fair market value rather than the value shown by the books of account. We are in accord with the views expressed in the dissenting opinion on this issue, where it holds, referring to the contracts in question:

"Here it is obvious from their context in the verbiage of the agreement that the 'audit' and 'inventory' were 'for the purpose of determining the net worth or value of a deceased partner's interest.' Thus, the 'audit' and 'inventory' were preliminary processes to. be utilized advantageously in furtherance of the determination, that is the appraisement, of the. net worth or value of the deceased partner's interest."

Secondly, the appellant urges there be added to the appraised value of the machinery the sum of $20,567.51 (*sic*). In 1943 the plant was moved and the machinery installed at a cost of $11,085.35; there were subsequent additional expenditures for moving, installing and over-hauling the machinery in 1945 to 1948, amounting to $9,482.46. Instead of capitalizing this sum as the appellant

suggests, the record shows the partners charged these disbursements to expenses.

██ There would be little justification in changing the accounting methods employed for years and acquiesced in and consented to by all the partners. Equity. does not give the representative of the deceased partner a greater right than he had. The record and the evidence do not persuade us that this item should have been added to the determined value of the machinery.

██ Next it is insisted that inasmuch as the appellant's accountant testified expenditures amounting to $2,413 had been made for the acquisition of machinery and this equipment does not appear in the partnership assets, it becomes the duty of the defendants to show what happened to it. Not having done so, the above amount should be added to the net worth.

We cannot agree with her conclusions, for which no authority is cited. There are too many other occurrences that may have happened to make it proper for us automatically to charge this amount to the surviving partners on the bare statement of the accountant without further proof of the existing circumstances.

The item of $1,700 for thread and supplies is not in dispute. It was accepted by the plaintiff and adopted by the court in its determination of net worth, and we are at a loss to know why the appellant sets it forth in her brief.

As to the item of $8,353.17 for labor in process, omitted from the inventory, and accrued labor for $10,147.47, shown as a liability, it is argued both should have been included or omitted.

It is evident the trial court gave this item consideration, for it arrived at a value of $2,002.86 for labor in process. The record is silent, however, as to how this figure was computed. Inasmuch as one phase of this litigation must be re-determined, we think this issue, too, should be re-adjudicated and the record completed in reference to it so we can intelligently pass upon it in review if the occasion should arise.

The same situation applies to the item of $2,378.42, inventory for labor on finished garments.

In reference to life insurance proceeds in the sum of $10,810.26, it appears the partnership paid the premium on the insurance and the appellant says the partnership being the beneficiary, the proceeds belong to the partnership, but, by the same token, one-sixth of it belongs to her.

Whether or not this figure should be added to the deceased partner's interest depends upon the interpretation of the partnership and insurance agreements executed by the parties. The record, however, is conflicting and confusing. At the trial, counsel for the plaintiff contended these proceeds "form a part of the capital interest which the decedent's estate has a right to claim in these proceedings." The court commented it was controlled by the agreements, whereupon counsel for the surviving partners said: "If I may interrupt, counsel, we do not claim for a moment that the proceeds of this life insurance policy are anybody's property but your client's. Is that your point?" And again: "We agree they are yours."

Yet the deceased partner's estate appears not to have received credit for the proceeds. It is not mentioned in the trial court's opinion, and counsel for the respondents says nothing about it in his brief, although he complains about the record being incomplete and not fairly presenting the matters to be determined. This item, too, needs additional clarification and adjudication and will be remanded for that purpose.

The judgment of the Appellate Division, in so far as it relates to the value of the machinery, is reversed and the cause is remanded to have this issue determined in accordance with this opinion, together with other items specifically stated herein. The judgment of the Appellate Division in all other respects is affirmed. No costs to either party.

HEHER, J. (dissenting in part). As in *Blut v. Katz*, 13 *N. J.* 374, the surviving partners continued the partnership business without the consent of the personal representative of

the deceased partner, and, generally for the reasons given in the dissent in that case, I would direct the surviving partners to account for the profits earned after the dissolution of the partnership fairly attributable to the use of the deceased partner's capital.

While at the time of his death the deceased partner had, by reason of sick leave for more than 30 days in the calendar year, lost the right to participate in the profits of the partnership until he returned to active service, the long continued use of this partner's capital in the prosecution of the business after dissolution renders the surviving partners liable for the resulting profits.

The partnership agreement provided for a determination and payment of the net worth or value of the deceased partner's interest in the partnership within 30 days after death. This partner died on October 1, 1950. On December 27 ensuing, the surviving partners tendered $14,000 in payment of the interest of the deceased in the business, which concededly was not in accordance with their obligation under the contract. Plaintiff's repeated efforts to determine the net worth or value in keeping with the contractual formula were rebuffed, and this suit was brought on February 15, 1951. Plaintiff's endeavors to examine the partnership books of account were in vain until May 2 following, when an order to that effect was made in the cause at the instance of plaintiff. Meanwhile, no audit was made; and if an inventory of the machinery and equipment was taken, it was not made available to plaintiff until January 2, 1952. And the judgment of this court constitutes a finding that the surviving partners sought to evade their contractual duty.

In these circumstances, it is but just and equitable that there be an accounting of the profits made through the use of the deceased partner's capital in the continuance of the partnership business.

And I would include in the partnership assets the value of machinery and equipment for which an expenditure of $2,413 was made. I find no defense to the *prima facie* case made to this claim; also, I would make an allowance for

the installation of the partnership machinery, such as may reasonably be deemed an added element of value.

I would also modify the judgment accordingly.

HEHER, J., concurring in result.

*For modification*—Chief Justice VANDERBILT, and Justices. HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.