GUSSIE BLUT, AS EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF ISAAC BLUT, DECEASED, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. BENJAMIN KATZ AND HERMAN MARKS, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

Argued September 14, 1953—Decided October 13, 1953.

*Mr. Hymen D. Goldberg* argued the cause for respondents and cross-appellants (*Mr. Abram Waks,* attorney).

*Mr. Harry Chashin* argued the cause for appellant and cross-respondent (*Mr. Hyman W. Rosenthal,* on the brief; *Messrs. Marcus & Levy,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. We granted cross-petitions for certification in this cause, in which the dispute between the widow of a deceased partner and the surviving partners concerns her efforts to be paid for her deceased husband's share in the partnership business and the endeavors of the surviving partners to recover from the widow amounts paid to others to perform the work normally performed by the decedent.

In 1925 five partners executed a partnership agreement under which they conducted the United Shop Cap Company.

The term was for a period of one year. Amongst other things, it provided for even distribution of the profits, weekly allowances to the partners, and the paying off of any partner who should voluntarily withdraw.

Before 1940 two partners withdrew, but no further agreement was executed by the remaining partners, and from that date until the death of the decedent they operated the business as equal one-third partners.

In 1946 the plaintiff's husband became ill and thereafter, until his death in 1949, rendered no services to the partnership business. During this time, however, he continued to receive his customary weekly salary and his share of other withdrawals, amounting in all to some $60,000. He also had free access to the books of the business and complete information as to its operation, and apparently approved the various financial reports.

After his death the widow instituted this action as executrix against the two surviving partners, seeking a dissolution of the partnership, an accounting, and the appointment of a receiver. A counterclaim was filed seeking to charge the account of the deceased partner with the cost of providing substitute help during his illness from 1946 to 1949. To avoid the appointment of a receiver, the defendants deposited $25,000 with the court to secure payment of whatever sum might be determined to be due to the plaintiff.

At the trial level, judgment was entered in the amount of $19,153 and interest for the plaintiff to the date of the defendants' deposit into court, and the counterclaim was dismissed. *Blut v. Katz*, 14 *N. J. Super.* 121 (*Ch. Div.* 1951). The sum so arrived at represented the deceased partner's interest in the capital account at the time of his death. Good will was excluded as an asset of the partnership in calculating the deceased partner's interest.

On cross-appeals to the Appellate Division, it was there determined good will should have been included, and the cause was remanded to the Chancery Division to determine the value thereof. Both sides are dissatisfied with the results and each appeals.

The first issue to be decided is the denial by both lower tribunals of the plaintiff's demand for an option to recover the profits earned after the dissolution which might· be attributable to the use of her husband's capital by the defendants in continuing the partnership business. The demand was made pursuant to *R. S.* 42 :1–42 and the briefs are replete with discussion of the meaning of the statute.

The Appellate Division reasoned thusly :

"The plaintiff argues that under *R. S.* 42:1–42 she is entitled to receive the profits attributable to the use of Blut's capital since his death. However, such right accrues where the business is continued after the death of a partner 'with the consent of * * * the representative of the deceased partner.' *R. S.* 42:1–41.3. The trial court found that in this instance there had been no consent, citing *Laterra v. Laterra*, 134 *N. J. Eq.* 162 (*E. & A.* 1943), which held that participation in the profits of an enterprise rested upon contribution of skill, time and diligence, rather than the mere use of capital. With this view we agree. *Phillips v. Reeder and Prior*, 18 *N. J. Eq.* 95 (*Ch.* 1866)."

The plaintiff asserts this is erroneous because it gives "a novel and unjustifiable interpretation" to the statute, and her consent to the continuation of the business is "immaterial on the question of her right of election."

The statute referred to deals with the liability of persons continuing partnership business without liquidation. It is obviously designed to protect the estate of a deceased partner from the demands of creditors in the event the executors see fit to liquidate. If the executor gives consent to the continuation of the partnership business without liquidation, then the estate's interest in the partnership is subjected to the claims of any new creditors.

It is contended the statutory plan requiring consent as therein outlined consistently provides that the *quid pro quo* is the right to a proportionate share of the profits of the new partnership if the personal representative so chooses, for the assumption of the additional risk of claims of the new creditors. Without the personal representative's consent, it is said, no additional risk is assumed and the Legislature by

its enactment, therefore, gave no right to a share of the profits.

*R. S.* 42:1-42, entitled "Ascertaining value of interest of retired or deceased partner," giving the right to profits, refers to "conditions set forth in paragraph \* \* \* 3 \* \* \* of section 42:1-41 of this title \* \* \*." Paragraph 3 of *R. S.* 42:1-41 provides:

> "When any partner retires or dies and the business of the dissolved partnership is continued as set forth in paragraphs '1' and '2' of this section, with the consent of the retired partners or the representative of the deceased partner \* \* \*."

*R. S.* 42:1-42 pointedly refers to *paragraph* 3 of *R. S.* 42:1-41, which, in turn, specifically provides for the consent of the retired partner or the representative of the deceased partner.

This is the manner in which the statute was construed by both lower tribunals, and in that construction we concur, even though research fails to disclose judicial adjudications in other jurisdictions buttressing this interpretation.

The only contrary thoughts we have encountered are expressed in an opinion construing the New York Partnership Act, identical with our own, *M. & C. Creditors Corp. v. Pratt,* 172 *Misc.* 695, 17 *N. Y. S.* 2d 240 (*Sup. Ct.* 1938), affirmed 255 *App. Div.* 838, 7 *N. Y. S.* 2d 662 (1938), app. den. 255 *App. Div.* 962, 8 *N. Y. S.* 2d 990 (1938), affirmed, no opinion, 281 *N. Y.* 804, 24 *N. E.* 2d 482 (*Ct. App.* 1939), where the writer, referring to the sections already discussed, says they could not have been intended to limit the rights of the representatives to require payment of the decedent's interest as of the date of death. Also, in *Cahill v. Haff,* 248 *N. Y.* 377, 162 *N. E.* 288 (*Ct. App.* 1928), the court, although finding consent express or implied by the representative and holding he was therefore entitled to receive the profits attributable to the use of his rights in the property of the dissolved partnership, by way of dictum opined: "Probably the same thing is true if there be no consent."

However, we have concluded in the case *sub judice* that the statutory plan involves the giving of consent to the continuation of the partnership business before a deceased partner's representative can exercise the option to profits. Furthermore, consideration of merely the broad equitable doctrines applicable, without recourse to the statute, brings us to the same end result.

There is much authority sustaining the principle that, where one or more partners of a firm continue the business after the death of one of the partners, the legal representative of the deceased partner is entitled to his share of the profits made, *Phillips v. Reeder and Prior*, 18 *N. J. Eq.* 95 (*Ch.* 1866); *Drapkin v. Klebanoff*, 5 *N. J. Misc.* 531 (*Ch.* 1927), but this principle is not universally applied; it has many limitations and qualifications and is always subject to equitable considerations.

So, where the main success of the firm is due to the skill, time and diligence of the remaining partners, the application of the rule has been withheld upon the ground that it would be inequitable to do otherwise. Profits having been denied, interest on the amount involved is substituted in its place. *Phillips v. Reeder and Prior, supra; Laterra v. Laterra*, 134 *N. J. Eq.* 162 (*E. & A.* 1943).

Here the success of the business, from the record, appears to be due to the personal element and efforts, the plaintiff's husband having made no contribution to its continuance for a long period of time while he was ill. Under the circumstances and the proof, it would be inequitable to permit the plaintiff to participate in the profits made after the dissolution, to which she contributed nothing, as determined by the trial court.

Assuming consent to be a prerequisite to her right to elect to receive profits in lieu of interest, the plaintiff insists the findings of the trial court and the Appellate Division that she did not give consent to the continued operation of the partnership business were erroneous, as "all the evidence in the case is to the contrary."

██ This lavish assertion, however, finds little support in the record. There is an abundance of evidence sustaining the conclusions arrived at below. Being purely a fact issue, decided adversely to the plaintiff by both lower courts, we will not ordinarily make an independent finding unless a miscarriage of justice is imminent. *Midler v. Heinowitz*, 10 *N. J.* 123 (1952). We do not conceive that to be the situation here.

█ The defendants on their cross-appeal charge error in the holding that they were not entitled to be reimbursed for sums paid to other employees required to perform the deceased partner's work.

The trial court embraced the doctrine of waiver, finding the defendants, in approving the accountant's reports and statements of the partnership business, waived any right they may have had to charge the deceased partner later with the cost of providing substitute help. while the Appellate Division reached a like result, laying emphasis on the fact that no deductions were made from Blut's drawing account nor were his partnership accounts so charged, concluding the payments were gratuitous.

These expenditures were not charged, admit the defendants, against the deceased partner's account while he was alive for fear of its deleterious effect upon his health, but they argue strenuously there is no waiver since there was no consideration. Further, there is said to have been no ground for application of the doctrine of estoppel and no gratuity.

The classification of these expenditures is evidenced by an abundance of irresistible testimony indicating there was no intention to charge these items against the deceased partner. The defendants' whole course of conduct bespeaks otherwise. The expense had been absorbed in the accounts of the company, and financial statements to that effect had been issued with full knowledge of all the circumstances. The defendants' commendable generosity, extended to their ailing partner over the years, was not converted into a demand

for reimbursement until they felt they were being imposed upon by the widow's aggressive action and excessive claims.

Defendants next allege error in the Appellate Division's allowing good will to be considered as a partnership asset in determining the value of the deceased partner's interest.

The trial court denied its inclusion, relying upon the original partnership agreement, which provided if any partner voluntarily withdrew, then good will should not be considered in determining the amount due. The Appellate Division, however, logically points out the withdrawal here was not voluntary but was caused by death, and the contingency of death was never considered or contemplated in the partnership agreement as drawn.

█ Our statutes impliedly recognize good will as a partnership asset, *R. S.* 42 :1–9, and there appears to be ample authority for its inclusion as an asset in determining the value for purposes of liquidation, where the partnership agreement does not eliminate it by express terms. In *Kanzler v. Smith*, 123 *N. J. Eq.* 602 (*E. & A.* 1938), the Court of Errors and Appeals said the liquidation of the partnership property in accordance with law does not contemplate more than disposal of the physical assets and an accounting by the surviving partner of the value of the deceased partner's interest, including the value of good will, if any. The same court, in *In re Westhall's Estate*, 125 *N. J. Eq.* 551 (*E. & A.* 1939), said:

"It is a commercial corollary that a long established business which can net a profit of $12,000 in less than a year possesses a tangible and substantial good will value."

█ Here the record indicates the partnership earned approximately $73,000 in 1946, about $47,000 in 1947, and $28,000 in 1948. The facts in the case under consideration make us conclude good will should have been considered, as the Appellate Division decided.

The defendants contend the issue of good will was not embraced in the pretrial order and "the Appellate Division

was not warranted in considering the matter and, on the merits, its conclusion was wrong."

 The issue was clearly raised at the trial, recognized by the court, and not objected to by the defendants. *Rule* 3:15–2, now *R. R.* 4:15–2. The record shows the court granted permission to the plaintiff "to reserve the right to offer evidence of the value of good will." To deny consideration of this issue, under these circumstances, would be inequitable.

Lastly, the defendants urge that when the cash deposit was made in court to secure any judgment recovered, they should not have been required to pay further interest.

 The order permitted the filing of a bond, but the defendants decided to deposit cash. Interest after dissolution is normally payable to the date of judgment, *Laterra v. Laterra, supra,* and the deposit as construed by the Appellate Division was in no sense payment to the plaintiff. It was security for payment and made to avoid the appointment of a receiver. We are in accord with the Appellate Division's conclusions.

For the reasons herein cited, the judgment of the Appellate Division is affirmed and the cause remanded to the Chancery Division for disposition not inconsistent with these views.

HEHER, J. (dissenting in part). I agree that the proofs do not sustain the contention that the plaintiff representative of the deceased partner consented to the continuance of the partnership business after his death. But this does not defeat her right, if she so elects, to recover the profits earned after the dissolution of the partnership fairly attributable to the use of the deceased partner's capital in the continuance of the partnership business. If this be the representative's right where such consent is given, and *R. S.* 42:1–41 and *R. S.* 42:1–42 expressly so provide, then *a fortiori* this is so where the business is continued without consent; for it would seem that on the plainest principles of equity and justice the surviving partners should account for the profits

ensuing from their unauthorized use of the deceased partner's capital. The principle of unjust enrichment has peculiar application in such circumstances. It is not the capital risk that determines the right, but rather the reaping of a profit from the use of the capital.

The statutory provisions cited *supra* have reference to the rights of creditors where consent is given to continue the partnership business.

I would modify the judgment in this regard also.

*For affirmance*—Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For modification*—Chief Justice VANDERBILT and Justice HEHER—2.