Robert K. SKILLMAN, M.D., Respondent,

v.

FIRST NATIONAL BANK OF KANSAS CITY, Missouri, Executor of the Estate of Phillip L. Byers, M.D., Deceased, Appellant.

No. KCD 27153.

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

Motion for Rehearing and/or Transfer Denied June 2, 1975.

Application to Transfer Denied July 14, 1975.

William M. Stapleton, Daniel M. Dibble, Kansas City, for appellant; Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, of counsel.

Roy A. Larson, Laurence R. Tucker, Morris, Mitchell, Larson, King, Stamper & Bold, Kansas City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action to construe partnership agreement. Trial court found for plaintiff. Defendant appealed.

Dr. Phillip L. Byers began the practice of medicine in Kansas City in 1938. In 1954, Dr. Robert K. Skillman joined him as a partner and they practiced under an oral partnership agreement until December 21, 1968. At that time they entered into a written partnership agreement which is the subject of this litigation. Under the agreement they were to share equally in the profits, but a "billing differential provision," at the crux of this controversy, provided for the reduction in the share of the income for a partner whose annual billings fell ⅙ below the billings of the other partner.

The partnership agreement provided for disability benefits for temporary total, temporary partial, permanent partial and permanent total disability. The latter also had the effect of terminating the partnership.

Doctor Byers became ill with terminal cancer. His last work was performed April

30, 1970. A physical examination, as called for by the partnership agreement, resulted in a finding by the trial court that Doctor Byers' permanent disability began July 1, 1970 and that the partnership terminated on that date. The trial court also found that Doctor Byers became temporarily totally disabled on April 30, 1970.

Plaintiff's action was filed July 27, 1971. Doctor Byers died December 10, 1971, and his executor was substituted as defendant. In his petition, plaintiff asserted that April 30, 1970 was the date of Doctor Byers' permanent disability, but he does not here question the trial court's July 1, 1970 finding.

With that question no longer in controversy, the problem presented relates to the proper application of the "billing differential" to Doctor Byers' share of the partnership income during 1970 and to the benefits to which he was entitled under the agreement upon his permanent disability.

The "billing differential" problem arose by reason of the following provision of the partnership agreement:

"15. VOLUNTARY REDUCTION OF WORKLOAD. In the event the annual billings of a Partner whose interest in the capital account is 33⅓% or more (hereinafter called a full Partner) fall one-sixth below the average annual billings of all the other full Partners, such Partner's share of the partnership profits for each succeeding year shall be reduced by the difference between his average annual billings and the average annual billings of the other full Partners for the year in which such one-sixth or more reduction shall occur, the amount of profits thus reduced to be shared pro rata by the other Partners. If, in succeeding years, such Partner's annual billings increase so that the difference between his annual billings and the average annual billings of all other full Partners is less than one-sixth of such Partner's annual billings, the reduction of his share of partnership profits shall cease and he shall share in partnership profits as provided in Section 7 hereof."

(The partnership agreement as originally drawn contemplated a partnership of three members. The third member did not join in the agreement.)

According to the stipulation on which the case was submitted, the "billing differential" provision was included in the agreement at Doctor Byers' request. (Apparently the "billing differential" was applied in the 1968 partnership year, inasmuch as the December 31, 1969 financial report for the partnership showed a "Prior Year Billing: Differential" charge against Doctor Byers of $24,099.27.)

For the 1969 year, the billing differential charge against Doctor Byers was $34,504.80. The basic controversy, once the termination date was established, is whether or not this differential is to be applied against the permanent disability benefit payable to him under the following provision of the partnership agreement:

"2. If a Partner voluntarily withdraws from the partnership and does not continue in the active practice of medicine in the Greater Kansas City area, as above defined, or the partnership terminated because of the permanent total disability of a Partner, such withdrawing or disabled Partner shall receive from the remaining Partners an amount, in addition to the value of his interest in the capital account, equal to his share of the partnership profits for the three months preceding the date of termination of the partnership, such amount to be paid by the remaining Partners within one year after the date of termination of the partnership."

The plaintiff asserted that the billing differential was to be applied against Doctor Byers' share of the profits for 1970 and also against the permanent disability payment.

Based upon the trial court's findings as to the effective date of Doctor Byers' permanent disability and the termination of the

partnership, three computations were submitted in the agreed statement of facts on which the case was tried as possible under the agreement:

*"Construction B:*

"Assuming that temporary total disability commenced on April 30, 1970, and that permanent total disability commenced on June 30, 1970, and further assuming that the 1969 billing differential is not applicable after December 31, 1969, then Byers is entitled to the sum of $40,442.28.

\* \* \* \* \* \*

*"Construction D:*

"Assuming that temporary total disability commenced on April 30, 1970, and assuming that total permanent disability commenced on June 30, 1970, and further assuming that the 1969 billing differential should be applied to the capital account of Byers for the year commencing January 1, 1970, and assuming that the 1969 billing differential should not be applied to the three month termination benefit, then Byers is entitled to the sum of $5,937.49.

\* \* \* \* \* \*

*"Construction F:*

"Assuming that temporary total disability commenced April 30, 1970, and assuming that permanent total disability commenced June 30, 1970, and further assuming that the 1969 billing differential is applied to Byers' capital account for the year commencing January 1, 1970, and to the three month termination benefit, then Byers owes the partnership $2,688.69."

The defendant also submitted Construction H, as follows:

*"Construction H:*

"Assuming that temporary total disability commenced April 30, 1970, and that permanent total disability commenced on June 30, 1970, and further assuming that one half of the 1969 billing differential is appli-

cable, then Byers is entitled to the sum of $23,189.88."

Plaintiff agreed with the mathematics of this computation, but did not agree that it was a possible construction of the agreement.

The trial court accepted and adopted Construction F, but since plaintiff had disclaimed any claim for money judgment, no monetary judgment was entered. On this appeal, appellant urges that the trial court erred in failing to accept Construction B. Alternatively, appellant contends that Construction H should have been accepted.

The arguments of appellant in support of the claim that Construction B should have been accepted are summarized in its brief as follows:

" \* \* \* [T]his Court should find that the billing differential provisions of paragraph 15 have no application to the year 1970 first because the paragraph contemplates only a voluntary reduction of work load; second, because the billing differential operates only upon partnership profits (not disability benefits) and only then when they are ascertainable at the end of the year and contemplates an ongoing partnership during the entire succeeding year and not a termination thereof; and third, because to apply the entire amount of the billing differential would wipe out the disability benefits elaborately provided for elsewhere in the contract and would result in an inequitable, unreasonable and unfair interpretation of the agreement."

■ The parties offer no novel suggestions as to the applicable rules in the construction of the agreement. They agree that the intent of the parties should be sought out and applied. They agree that the court should look to the words employed by the parties. Ward v. Gregory, 305 S.W.2d 499, 503[3] (Mo.App.1957). The agreement must be examined from its four corners and isolated provisions should not be sought out to the exclusion of others.

Warnecke v. Rabenau's Estate, 367 S.W.2d 15, 17–18[2, 3] (Mo.App.1963). Appellant also argues that when a contract is fairly susceptible to two constructions, the one which makes it fair, customary and such as prudent men would naturally make will be adopted, and the other which would make it inequitable, unusual or unreasonable will be rejected. Miller v. Kamo Electric Cooperative, Inc., 351 S.W.2d 38, 42[3] (Mo.App. 1961). Appellant also argues that a clause of doubtful meaning should be given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage over the other. Isaac T. Cook Company v. Bank of St. Louis, 297 S.W.2d 607, 611[5] (Mo. App.1957).

Respondent accepts these rules and cases, but would apply them in full for both parties. Respondent also would construe the billing differential provision strictly against Doctor Byers inasmuch as he was responsible for that provision of the agreement. McIntyre v. McIntyre, 377 S.W.2d 421, 426[11, 12] (Mo.1964).

■ Appellant advances three considerations which it contends shows that the billing differential provision was not intended to apply to the operation of the partnership in 1970. First, appellant contends that the caption of the provision in the agreement "VOLUNTARY REDUCTION OF WORKLOAD" indicates that the provision was intended to apply to voluntary action by one of the partners, which results in smaller billings, not to reduction in billings resulting from illness which produces disability. Appellant states: "As the stipulated facts have shown, Dr. Byers contracted terminal cancer and was totally disabled by that disease beginning April 30, 1970. Therefore, the reduction of his work load in *1970* (emphasis supplied) was anything but voluntary, * * *." The difficulty with this argument is that the billing differential here involved arose because of Doctor Byers' smaller billings for 1969, not 1970. The stipulation of facts gives no basis for

applying appellant's conclusion to the 1969 year and therefore this argument must be rejected.

■ Appellant next argues that the billing differential is to be applied to reduce the "partner's share of the partnership profits for each succeeding year" and that this language means that the effect of the billing differential was not to be applied until the end of the succeeding year, when the partnership profits are ascertained. Appellant argues that since the partnership did not continue for the full year 1970, there was no ascertainable profit for the partnership for that year against which the billing differential might be applied.

This contention is without merit. The purpose of the billing differential provision was to adjust the partner's share of the income according to the share of the work done by each of them in producing the income. For the year 1969, the differential was ascertainable at the end of that year. When it reached the ⅙, the differential was to be applied in the distribution of the profits of the succeeding year. A monthly profit statement was prepared for the partnership, showing the profit from each month's operation through June, 1970. The partners' drawings were obviously related to the effect of the billing differential reduction, with Doctor Byers drawing $30,300 through June 30 and Doctor Skillman $63,-000 during the same period. This evidences the construction which the parties themselves placed on the agreement and refutes the contention that the billing differential was to be given no effect until the end of the year 1970.

Appellant next contends that the 1969 billing differential should not be applied to 1970 because to do so would wipe out all disability benefits due Doctor Byers. Appellant argues that the parties would not have made detailed and extensive provision for disability benefits if they thought that it was possible to wipe out those benefits by application of the billing differential.

■ Temporary total disability benefits, under the agreement, consist of the disabled partner's "share of partnership profits" for a period of seven months. Inasmuch as the billing differential is to be applied to the partner's "share of the partnership profits," no reason appears for not treating such income in the same manner as regular partnership income, insofar as the billing differential is concerned. What Doctor Byers was entitled to during his temporary total disability was his "share of partnership profits," which would include the effect of the billing differential. There is nothing in the agreement which indicates that the parties intended that the onset of disability would nullify the disabled partner's obligation to the other partners which had arisen by reason of the past greater contribution of the nondisabled partner.

In the computations suggested by the parties below, there does not appear to have been any special consideration given or distinction made between the temporary total disability benefits to which Doctor Byers might have been entitled and his regular share of the partnership income. There does appear to have been a distinction made with respect to the termination benefit. The computation accepted by the trial court in which specific reference was made to the application of the billing differential to the three month termination benefit resulted in Doctor Byers owing the partnership $2,688.69. Construction D, which was on the same basis as Construction F except that in the latter the billing differential was not applied to the termination benefit resulted in Doctor Byers being entitled to receive $5,937.49. The difference between these figures is $8,626.18. No analysis of the computation by which this difference was arrived at has been given, but, since this figure is only two cents less than one fourth of the billing differential, it is obvious that this amount is related to one fourth of the billing differential and that in Construction F Doctor Byers' termination benefit was reduced by that amount. The

assumption appears to have been that since the termination benefit was a three months' share of the profits, the applicable portion of the billing differential would have been $8/12$ or $1/4$ of the year's total. That is demonstrated by the following computation:

| | Construction D | Construction F |
|---|---|---|
| Beginning Capital Balance | 3594.86 | 3594.86 |
| 1/2 Income through 6/30 | 45130.33 | 45130.33 |
| 1/2 Income 5/1 through 6/30 | 22017.10 | 22017.10 |
| Less 1/4 Billing Differential | | −8626.18 |
| Total Credits | 70742.29 | 62116.11 |
| Drawings | 30300.00 | 30300.00 |
| Billing Differential | 34504.80 | 34504.80 |
| | 5937.49 | −2688.69 |

■ The inequity of Construction F is apparent. The billing differential has been applied not once, but twice. Although appellant has not argued here for Construction D, in view of other errors in the trial court's judgment, considered later, the court on remand should enter judgment declaring that Construction D is the proper construction of the billing differential clause in this case.

■ Respondent's contention that because the partnership books showed a deficit in Doctor Byers' capital account, he lost all entitlement to either temporary total or permanent disability benefits, must be rejected. None of the constructions suggested to the trial court involved such an assumption. The partnership was a 50–50 arrangement. The current status of either partner's capital account as shown on the books of the partnership did not alter the right to share profits on the 50–50 basis, except insofar as the billing differential clause and other provisions of the agreement might temporarily reduce one partner's share of the income.

The construction of the billing differential clause here applied will not produce an unreasonable and inequitable result. Disability benefits are reduced but do not become nonexistent. As stipulated by the parties, this provision was Doctor Byers' idea. He lived with it through 1969 which

saw a $24,099 billing differential for the preceding year result in his drawing $68,600 in 1969, whereas Doctor Skillman drew $111,500 from the partnership profits. He was fully aware of the effect of the provision at the time that his answer and counterclaim were filed in this litigation, yet he sought no relief from the provisions of the agreement by way of reformation. There is no reason to assume that the billing differential provision has not been applied as the parties intended when the agreement was entered into.

Appellant has suggested that the pro-rata application of the billing differential for 1970, which is the basis of Construction H in the parties' stipulation, be adopted. Appellant points to nothing in the terms of the agreement which would authorize such construction.

In his counterclaim Doctor Byers asked for judgment for the amount of his capital account plus his share of the partnership profits from January 1, 1970, and disability benefits. The stipulation of facts recited that, on December 1, 1971, Doctor Skillman and Doctor Byers entered into an agreement with the lessor of the premises occupied by the partnership and a new lessee of such premises, under which the lease to Skillman and Byers was cancelled and certain "machinery, equipment, fixtures, installations, attachments, alterations, additions and improvements" were conveyed to the new lessee for $34,963.80. The stipulation also recited that the fixed assets of the partnership had a net book value as of June 30, 1970 of $9,468.49, which had been calculated in the various constructions previously referred to.

By his suggested findings of fact, the defendant sought a finding that the fair market value of Doctor Byers' assets in the capital account on July 1, 1970, was $17,481.90, or $12,747.66 more than the book value of his share of the assets on that date. Suggested conclusions of law included a finding that the fair market value rather than book value of the assets in the capital

account was to be used in determining their value on the date that the partnership terminated or July 1, 1970. The suggested conclusions of law by defendant also sought recovery of $12,746.95 in addition to defendant's claimed share of profits, that sum being the difference between the claimed fair market and book value of the assets.

The trial court adopted suggested findings by plaintiff that there was not sufficient evidence upon which to base a finding of fair market value of the assets on July 1, 1970. The court also found as a matter of law that the intent of the agreement was that book value be used in determining the value of the capital account for the purpose of calculating the termination benefit of Byers.

Appellant attacks those findings on this appeal. Respondent asserts that appellant has no standing to attack the findings because the stipulation below made no reference to "fair market value" of the assets and argues, in effect, that the question was never successfully raised below. The stipulation, taken with defendant's suggested findings, shows clearly that defendant was seeking relief on the theory that the sale price of the fixed capital assets evidenced their fair market value as of the date of termination of the partnership. Respondent's contention that the matter was not presented to the trial court cannot be accepted.

The provision of the agreement involved in this dispute is that portion of the provision for benefits to a totally disabled partner which includes "the value of his interest in the capital account * * *." Respondent here asserts and the court below found that by this provision the parties meant the book value of the disabled partner's interest in the capital account.

This provision is a part of Article 20 of the Agreement, dealing with "Retirement or Liquidation." Under subsection (a) dealing with "Retirement," which was likely drawn with the three-man partnership in

mind, the retirement of a partner from the business was not to have any effect on the continuation of the partnership business. "The partnership books shall be closed at the end of the calendar year in the regular way and the retiring Partner shall be paid the amount of his interest in the capital account *as then shown on the partnership books* (emphasis supplied)." This demonstrates clearly that the parties knew how to make book value the controlling value for the purpose of calculating a partner's share of the capital account. Such language is significantly lacking insofar as the provision here involved is concerned.

The contrast between the language of the provision here involved and that under Article 20(a) leads to the conclusion that the trial court erroneously held that Doctor Byers' share of the partnership capital account was to be valued at its book value for the purpose of Article 20(b) 2. See Watson v. Lunt, 75 N.M. 734, 410 P.2d 954, 955[2] (1966); Sorokach v. Trusewich, 13 N.J. 363, 99 A.2d 790, 794[5, 6] (1953).

■ The question remains whether or not the sale on December 1, 1971 was sufficient proof of the value of the assets on July 1, 1970. "The price which personal property sold for at a time subsequent to the time as of which value is to be determined, but not too remote, is also admissible as evidence of its value." 29 Am.Jur.2d Evidence, § 389, p. 441 (1967). The property involved is described as "machinery, equipment, fixtures, installations, attachments, alterations, additions and improvements  *  *." Their exact nature does not appear but obviously they are items required for equipping a doctor's office. Such items are not subject to rapid or wide fluctuation in value. Therefore, the sale price in December, 1971 is not too remote to evidence the market value of the property as of July 1, 1970. The trial court erred in concluding that there was not sufficient evidence from which such value could be determined. The sale price was sufficient for that purpose.

The judgment is reversed and the cause remanded for entry of a new judgment in accordance with the views herein expressed. Such judgment shall include a monetary judgment in favor of defendant on its counterclaim in the amount of $18,684.44, consisting of $5937.49 due as Doctor Byers' share of the partnership income and benefits for permanent disability and $12,746.95, representing the difference between the fair market value and the book value of the assets in Doctor Byers' capital account on July 1, 1970.

Reversed and remanded.

All concur.