This litigation is between wife and husband. It concerns a paper and twine business in which *Page 420 
both parties were engaged. The action commenced with the filing of a bill of complaint in the former Court of Chancery by Mary G. Bacon, the wife. She alleged that she was the owner of the business and that her husband, Jacob D. Bacon, the defendant, who was employed by her as a salesman, was seeking to seize the business as his own. A restraint against Bacon was sought. In his answer Bacon denied the allegations of the complaint and, by way of counterclaim, asserted that he was an equal partner in the business. He sought a dissolution of the partnership and an accounting. As a further cause of action, Bacon alleged that the family home, title to which had been taken in the name of Mary Bacon, had been purchased with funds supplied by him and under an agreement that he was to receive a one-half interest as tenant by the entirety. A judgment enforcing the agreement was sought.
The case was referred to former Vice-Chancellor Lewis while he was still in active service. A final hearing was started and several days' testimony had been taken when he retired. Then, at the request of the parties, the matter was referred to the former Vice-Chancellor as Special Master so that he might conclude the hearings. On April 8, 1949, the master filed a report of his conclusions. Exceptions to the report were taken, argument was had thereon and the matter is now before me for determination.
The Special Master concluded that Bacon Graham was a partnership business owned equally by Jacob D. Bacon and Mary G. Bacon, his wife. He concluded that the plaintiff should account for the defendant's interest in the partnership and for the profits and losses up to and including the date of the report. And finally, he held that the real estate standing in the name of Mary G. Bacon should be transferred to Mary G. Bacon and Jacob D. Bacon as tenants by the entirety.
Feeling between the parties is extremely bitter. At times during the hearings their desire to score over the adversary caused them to stray from the truth. As a result, it was difficult to determine what were the facts. *Page 421 
However, from the welter of fact and fiction the following picture emerges. Jacob D. Bacon and the plaintiff were married in 1929. They have one child, a son. Bacon has had a varied business career. Mary Bacon, prior to her marriage, had served in various clerical capacities. At the time of the marriage Bacon was operating a large storage garage in the City of Paterson. He continued in this business until 1938, when the depression proved too much for the garage business and it was lost by foreclosure. Mrs. Bacon, who had ceased work upon her marriage, went to live with her parents, Bacon to live with his sister. In 1939 Bacon started the paper and twine business in a small way. Progress was slow. Husband and wife conferred on ways to increase their income so that they might again have a home of their own. Mary Bacon suggested that she should borrow money on a diamond ring which defendant had given her. Together they determined to borrow money from relatives and place the combined sum in the business, as capital. Accordingly, Mrs. Bacon borrowed $220 on the security of the ring. An additional $200 they obtained in the form of a loan from Mrs. Bacon's brother, a lawyer. Bacon, at the time, had two judgments against him and the brother, as a condition to the making of the loan, insisted that it should be made to appear that the business belonged to Mrs. Bacon until the loan was repaid. Bacon demurred. He was not being pressed. He intended to pay the claims against him at the earliest possible moment and he saw no need for the subterfuge. He was overruled and a certificate of trade name was filed setting forth that Mary G. Bacon was trading as Bacon Graham. An account in that name was opened. Mary Bacon executed a power of attorney to her husband. It was not used, however. A signature card requiring the signatures of Mary G. Bacon and Jacob D. Bacon was filed at practically the same time. The $220 received on the ring and the $200 loan obtained from Mrs. Bacon's brother, as well as a small additional sum from Bacon were deposited in the account. On paper the enterprise appeared to be the sole venture of Mrs. Bacon. Actually, *Page 422 
however, it was a partnership. Checks were signed by both partners. Loans required for the business were obtained upon the joint credit of both Bacon and his wife. Business premises were rented in both names. No salaries were taken by either of them. Such drawings from the business as were made were for their joint benefit. The insurance remained in the name of Mary G. Bacon, trading as Bacon Graham. And the income tax returns prepared by another brother of Mrs. Bacon were not partnership returns. But I am firmly of the opinion that the business was a partnership and was so regarded by the parties. And they would still be operating the business as a joint venture had it not been for the break in their relationship.
What was the real cause for the break, I do not know. Ostensibly it was the disagreement between Mr. and Mrs. Bacon over the method of disposing of the last claim against Bacon. The business had prospered. The original loans had been repaid and the bank account had grown. By 1945 Bacon had only one claim left and he wanted to pay it. Mrs. Bacon apparently felt that the payment of the claim would be a waste of money. She wanted Bacon to go through bankruptcy. To his credit, he refused to do so. Mary Bacon refused to sign a check in payment of the loan and Bacon was compelled to borrow money. In retaliation he withheld customers' checks from the firm bank account. This litigation followed. On behalf of Mrs. Bacon it is argued that the original scheme was devised for the purpose of defrauding Bacon's creditors and that equity should not relieve him from the consequences of his fraud. The argument is specious and completely lacking in substance. The idea was not Bacon's. It was adopted in spite of his disapproval. And none of his creditors was harmed or deceived for that matter, so far as the record shows. It would certainly be doing violence to all principles of equity to permit one who devises a fraudulent scheme to benefit at the expense of an unwilling party to that scheme.
I agree with the conclusion of the master that there was a partnership and that there should be an accounting. I cannot *Page 423 
agree with him, however, on the scope of this accounting. This action was instituted on December 17, 1945. Bacon's answer, in which he set up the partnership and sought its dissolution, was filed on March 5, 1946. In the absence of evidence as to what, if anything, Bacon did in connection with the business between December 17, 1945, and March 5, 1946, I am of the opinion that the partnership terminated on the latter date. The accounting will not run beyond that time. Laterra v. Laterra,134 N.J. Eq. 162. I assume that the accounting already prepared by the court's accountant will suffice.
As to the real estate, I am unable to agree with the master's conclusion. So far as the record shows the home was bought at a time when the parties were living together in harmony. The money with which the property was purchased came from the account of Bacon Graham. Since that account was the joint property of the parties, Bacon contributed one-half of the purchase price. But title was taken in the name of his wife and under such circumstances a presumption of gift arises. That presumption can be overcome only by clear and convincing proof of a contrary intent. Strong v. Strong, 134 N.J. Eq. 513; affirmed,136 N.J. Eq. 103. Such proof is absent in this case. The conveyance to Mrs. Bacon must stand.
Judgment may be entered in accordance with the above. *Page 424