62 N.J. Super. 41 (1960)
162 A.2d 117
MAURICE SARNER AND LEONARD SARNER, AS STOCKHOLDERS OF LINWOOD PARK, INC., SECTIONS 1 TO 13, INCLUSIVE, EACH A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., PLAINTIFFS-RESPONDENTS,
v.
SIDNEY SARNER, INDIVIDUALLY AND AS AN OFFICER AND DIRECTOR OF LINWOOD PARK, INC., SECTIONS 1 TO 13, INCLUSIVE, EACH A CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1960.
Decided June 6, 1960.
*46 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Ward J. Herbert argued the cause for defendants-appellants (Messrs. Back, Nussman and Rose and Mr. Aaron W. Nussman, attorneys).
Mr. Walter D. Van Riper argued the cause for plaintiffs-respondents (Messrs. Van Riper and Belmont, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Sidney Sarner is sued in this action by his younger brothers, Maurice Sarner and Leonard Sarner, each of whom holds a 10% stock interest in some 18 real estate corporations in Bergen County, Sidney owning the remainder. They contend that Sidney has misused his position as majority stockholder and dominant officer of the corporations to his private advantage. In that aspect their action is brought in a capacity representative of all stockholders, seeking to make the corporations whole. The action also seeks the declaration of a partnership interest of plaintiffs, individually, to the extent of 10% each, in Sarner Management Co., an unincorporated company organized to act as rental and managing agent of the properties of the *47 real estate corporations referred to, and an accounting for unpaid profits of that enterprise assertedly due them.
By the pretrial order and plaintiffs' concessions during trial the subject matter of the derivative stockholders' action has become confined to three of the corporations, Linwood Park Business Center, Inc. ("Business Center" hereinafter), Linwood Park Business Center, Inc., Section 1 ("Section 1" hereinafter), and Teaneck Gardens, Inc. ("Teaneck Gardens" hereinafter). The first two mentioned corporations own a shopping or business center in Fort Lee. The pretrial order states that plaintiffs seek the appointment of a receiver to operate and manage the business center properties and to recover from Sidney Sarner any moneys found to be due the corporations.
After trial the Chancery Division entered judgment (1) for $186,588.62 in favor of Business Center against Sidney Sarner, individually and trading as Sarner Management Co.; (2) for $157,547 in favor of Section 1 against the same defendant; (3) for $139,603.15 in favor of Teaneck Gardens against the same defendant; (4) appointing a receiver "for the purpose of collecting this judgment" who was further authorized to take over and manage the properties of Business Center and Section 1, with full authority to rent, maintain and operate them, and to pay over the net income therefrom to the proper officers of the owning corporations; and (5) directing Sidney Sarner to pay to each of the plaintiffs 10% of the net profits of Sarner Management Co. "from the date of its beginning business until the date hereof" (September 28, 1959).
Defendant Sidney Sarner appeals from the judgment and from an order directing payment by the corporations mentioned of $3,000 for services of an accountant ordered by the court pendente lite to be rendered to plaintiffs for purposes of discovery in the action.
For better understanding of the said defendant's contentions certain additional circumstances are noted. One of the other corporations owned by the individual parties is Linwood *48 Park, Inc., which owns unimproved land. Thirteen of the corporations are named Linwood Park, Inc., Section 1 to Section 13, consecutively (the "Section corporations" hereinafter). These companies constructed and operate apartment houses in Fort Lee adjoining the shopping center. By virtue of proceedings instituted by the United States Federal Housing Administration, apparently arising out of claims by that agency that F.H.A.-approved mortgages were improperly procured by those corporations in amounts exceeding construction costs of the buildings encumbered thereby, two nominees of the F.H.A. sit with Sidney Sarner as directors of these corporations. While the complaint originally instituted herein complained of improper activities by Sidney Sarner in respect of the Section corporations, the pretrial order eliminated that area of dispute from the present litigation.

I.
We first address our attention to the appeal from the money judgment in favor of the three corporations against Sidney Sarner, individually and trading as Sarner Management Co. It is to be noted that there is no dispute concerning the amounts adjudicated. The testimony shows that corresponding debit-credit entries appear on the books of each of the corporations and of Sarner Management Co. reflecting the obligations of Sidney Sarner, trading under that name, to the several corporations for the respective amounts stated. It appears that these obligations accrued through the failure of Sarner Management Co., managing agent of the corporate realty holdings, to remit to the corporations the full amount of rents collected over varying periods of time between 1951, when the first of these properties was erected, and December 31, 1958, as of which date the books of the various entities reflect the obligations noted. These funds were apparently part of the source used by Sarner to acquire a home, a large farming enterprise in *49 Connecticut (Sidney Sarner Foundation), and a part interest in a Connecticut restaurant, these being reflected as assets on the books of Sarner Management Co. at acquisition costs, respectively, of $78,644.81, $419,687.57 and $38,125.
The evidence further makes it clear that the development of all the business enterprises owned by the brothers Sarner is attributable practically in entirety to the business acumen of Sidney. Prior to 1950 Sidney and Maurice had some joint realty interests in New York City. Thereafter Sidney developed the large Bergen County holdings, Maurice getting a 20% share in Sidney's interest in the first project (Teaneck) for an investment of $5,000, but being later required by Sidney to share his interest in the expanded corporate enterprises to the extent of half, or 10% of the total, with Leonard, who contributed no money. Sidney thus retained an 80% interest. These percentages of interest were uniformly maintained in all the later corporate projects.
The proofs justify the conclusions of the Chancery Division that:
"Sidney Sarner has a domineering personality. He ran the entire operation with a minimum of consultation with his brothers. He would brook no interference with his actions and his decisions were final"
and that the transfers of funds from the corporations to Sarner Management Co. in the amounts stated were effected by Sidney without consultation with the brothers or authorization from the corporations. While the trial court in a sense correctly describes these transactions as diversions of corporate funds for Sidney's personal use, it is at least to be said for him that he caused the obligations to be openly acknowledged as his debts on the books of the corporations and the management company, and that the transactions are therefore more appropriately to be characterized as unauthorized loans from the corporations to Sarner, individually, devoid of any aspect of fraud or peculation. Nevertheless, plaintiffs properly assert the right of the corporations *50 to have recovery of these amounts from Sidney Sarner, individually, and trading as Sarner Management Co., and it is elementary that judgment therefor was properly entered.
Sidney Sarner's appellate argument contra is that the court should disregard the corporate forms and examine all of the underlying financial interrelationships of the brothers, inter se, from which, he claims, it will be seen that the net pecuniary equities preponderate in his favor. Specifically, he contends he should be permitted to retain the $483,737 in question because he has (1) loaned, through Sarner Management Co., about $150,000 to Linwood Park, Inc., the landholding corporation mentioned above (not here involved), in which Maurice and Leonard are also interested; (2) allowed some $338,000 allegedly due him by all the corporations (including the Section corporations) as salary to accumulate and thus is entitled to set off that amount against the withheld rentals owing the three corporations here involved; (3) personally paid off a $100,000 mortgage on New York property in which Maurice has a one-third interest; and (4) has owing to him personally from the corporations a builder's fee for the construction of the shopping project. Thus, he contends, there has been no improper withholding of moneys from the corporations because he is equitably entitled to them.
However, the doctrine of disregard of the corporate form where necessary for the accomplishment of justice and defeat of fraud is entirely inappropriately invoked in this factual and procedural setting. It is dispositive that the pleadings and pretrial order entered in this case contain not the remotest suggestion of any claim of set-off or counterclaim by defendant Sarner against plaintiffs individually or against the corporations in whose interest this aspect of the action is prosecuted. See R.R. 4:12-2; 4:13-1. If Linwood Park, Inc. owes Sidney Sarner anything, he is free to pursue his claim against it. As to the alleged back salary owing Sidney, aside from the facts that no such indebtedness is *51 pleaded or raised as an issue in the pretrial order and that the total amount mentioned purports to include obligations of the Section corporations, it does not appear that the books of the corporations show it as owing. A court of equity will not readily accept the explanation here proffered for the concealment of the alleged obligation on the books that Sidney wished to evade paying income taxes on any salary he might so accrue on the books and that it was therefore understood between the brothers on a "man-to-man" basis that Sidney would be entitled to it (presumably free of taxes) although he did not take it currently. In any case, we agree with the trial judge's description of this belated defense as founded upon "vague testimony" and devoid of "any substance." We give it no more credence than he did. The other bases mentioned above for Sarner's claim of immunity from accountability on his book obligations to the corporations are equally improperly asserted here. They are also beyond the scope of the pretrial order and pleadings, and cannot derogate the right of the three corporations in whose name these claims are here prosecuted to have satisfaction therefor from the defendant Sarner. They are entirely extraneous to this stockholders' action and have but the vaguest testimonial substance in the proofs.

II.
The opinion of the trial judge concludes that "plaintiffs are partners in Sarner Management Co., each having a one-tenth interest. As such they are entitled to an accounting of profits." Defendant disputes the soundness of this conclusion. It is agreed that Sarner Management Co. was set up late in 1950 for the purpose of managing any property the corporations might own. Its income was to consist of rental commissions and charges for the use by the tenants of washing machines owned by the management company. Plaintiffs contend, however, and testified that they were to be partners in the enterprise on the same 80-10-10 basis *52 as their respective stock interests in the corporations. Sidney, on the other hand, took the position that the brothers were merely employees of his and that the fact that they were each paid annual "bonuses" (over and above salaries) exactly equalling shares of profit on a 10% basis does not require a different conclusion. He emphasizes that the "bonuses" were subjected to withholdings for income taxes and that the management contracts were signed for the corporation by Maurice but only by Sidney himself for "Sidney Sarner, trading as Sarner Management Co." But it would seem that these circumstances, while entitled to weight, are not dispositive. There is reason to believe that Maurice and Leonard unquestioningly accepted Sidney's dominance in business affairs and signed as routine anything he required them to sign.
At the trial of this case a written management agreement between Sarner Management Co. and Teaneck Gardens, Inc. was marked in evidence as Exhibit D-1 for identification but never introduced in evidence (perhaps by inadvertence). In order to serve the interests of an entirely just disposition of this appeal, this court after the argument directed, in the exercise of our original jurisdiction, that the document be admitted in evidence, along with any such contracts with the other two corporations concerned in this appeal. Exhibit D-1 is therefore now in evidence, but the parties inform us that no written agreements were ever executed with Business Center or Section 1. Plaintiffs' position is that verbal agreements of similar import were arrived at for those two companies. (Such written agreements were executed with each of the thirteen Section corporations alluded to above.) The Teaneck Gardens agreement is dated November 1, 1950 and recites that it is to remain in force for a period of ten years "regardless of whether or not the personal ownership of Teaneck stock or of the Management Company changes or remains the same."
Defendant cites cases dealing with the stringency of the burden of proof in establishing a joint venture. However, *53 the claim and determination here is of a partnership, not a joint venture. We are satisfied, for reasons presently to be stated, that the proofs justified the trial court's determination that there was a partnership between the brothers on an 80-10-10 basis in the realty management enterprise. This did not, however, extend to the capital assets like the dwelling, the Sarner Foundation and the restaurant business, which Sidney put in the name of the management company, nor is any claim thereto asserted by plaintiffs. Nor, moreover, can we agree with the trial court that the partnership survived the expulsion of the brothers from the firm by Sidney  Maurice in 1954 and Leonard in 1956  or that either of them is necessarily entitled to a share of the profits for the period subsequent to his active association with the concern.
The Uniform Partnership Law, R.S. 42:1-1 et seq., as amended, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." R.S. 42:1-6. R.S. 42:1-7, paragraph 4, makes profit-sharing prima facie evidence of a partnership unless the profits are received in payment of one of a number of different specified kinds of obligations, the only one here relevant being wages to an employee. Co-ownership and employee status are, of course, mutually exclusive. The determination of which is the proper characterization of the position of the alleged partner depends on the surrounding circumstances, the intent of the parties and their conduct. See, e.g., Fenwick v. Unemployment Compensation Commission of N.J., 133 N.J.L. 295 (E. & A. 1945); Farris v. Farris Engineering Corporation, 7 N.J. 487 (1951). The indicia here adequately support the trial conclusion of co-ownership, rather than employment. Sidney himself describes the venture as one based on a "cooperative interest." Maurice's and Leonard's work for and concern with the rental collection agency cannot be said to have been merely those of devoted employees. Cf. Fenwick, supra. Since the agency's clients were not strangers, but, to an appreciable *54 extent, their own corporations, a proprietary interest in the activities of the agency was both justified and indicated to have been intended. Furthermore, the extent of Maurice's control with respect to the property management activities of the company warrants the conclusion of a "community of power in administration" of the business, see Fenwick, supra, 133 N.J.L., at page 299. Maurice, on cross-examination, said, "I think I could have done anything in that office if I wanted to, Mr. Nussman. I had a key and I knew the combination to the safe." This is not disputed. Neither was his fiduciary power in drawing checks, cf. Bacon v. Bacon, 8 N.J. Super. 418, 422 (Ch. Div. 1949), or his assertion that "I was not an employee in the sense that I was just hired. I indulged in the work of renting the place, of conceiving of rent schedules, of doing a lot of acts, not a simple employee; I had a very definite executive part in that outfit, and I always felt I was a part of it until I was kicked out."
Assuming, then, the correctness of the court's holding that Maurice and Leonard were partners, the question is, partners in what? The filed findings below conclude merely that "plaintiffs are partners in Sarner Management Co., each having a one-tenth interest." The judgment directed "Sidney Sarner, individually and trading as Sarner Management Company, * * * to pay to each of the plaintiffs herein, Maurice Sarner and Leonard Sarner, 10% of the net profits of the Sarner Management Company from the date of its beginning business until the date hereof." This is substantially the same relief as requested by the brothers in the third count of the complaint. But we conceive, for reasons to be stated, that the partnership had terminated before the trial, and that a different determination of appropriate relief was therefore called for.
First, it is clear that the only aspect of the management company which constituted a partnership was its management of the corporate properties. The partnership assets consisted solely of the agency agreements and the various items *55 of personalty owned by it in connection with its management of the property (washing machines, etc.). The extent of the partnership income was the commissions paid to it by the serviced corporations. And the extent of the interest of the brothers was the agreed-upon proportionate share in these commissions after deduction of the business expenses, including salaries.
It is also clear that the original partnership was dissolved in 1954 upon Maurice's departure. R.S. 42:1-29 ("The dissolution of a partnership is the change in the relation of the partners caused by a partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.") Assuming the continuation of the business (but only to the extent of the scope originally contemplated) by Sidney and Leonard to have constituted another partnership, that one, too, was dissolved by Leonard's departure in 1956.
Sidney Sarner was fully within his rights in terminating the partnership, first as to Maurice and then as to Leonard. This was not a partnership agreement for a specified term. Nothing in the testimony precludes the normal inference that the partnership agreement for joint management of the corporate properties was terminable at the will of any partner. See N.J.S.A. 42:1-31, 1b. Neither the plaintiffs nor the trial court have taken the position that the written agreement between Sarner Management Co. and Teaneck Gardens, or the fact that similar agreements were executed with the Section corporations, constitutes evidence that the partnership agreement between the brothers for conducting the management business was for a fixed term. Since we have directed the Teaneck Gardens agreement to be admitted in evidence for purposes of this appeal it becomes necessary that we express our view that it does not bear materially, if at all, upon the term of the partnership. As already noted, that agreement recites that it is to remain in force for ten years regardless of any changes in the proprietorship either of the corporation or the *56 management company. This clearly evinces an intention of the parties that the contract relationship between the owner corporations and the management company should have nothing to do with the status of the relationship between the brothers as partners in the management company.
Thus, as we find that the original partnership terminated with Maurice's separation therefrom in 1954, and the surviving partnership between Sidney and Leonard when those two parted company in 1956, the trial court's conclusion that the original partnership was still subsisting when it entered judgment in favor of plaintiffs for full contractual shares of partnership profits up to that date cannot stand, nor the judgment consequent thereon. This does not, however, mean that plaintiffs are bereft of any remedy for vindication of their rights in the partnership. The interests of a complete and just determination of the partnership phase of the case require a remand so that the proper shares of the plaintiffs in the management company may be adjudicated on appropriate formulation of issues and proofs. Certain observations in this connection may be helpful to the court on the remand.
It will become necessary, as to each plaintiff separately, to determine the value of his partnership interest in Sarner Management Co. when he was separated therefrom by Sidney's action. R.S. 42:1-42. Obviously the company had a valuable asset in the service contract with Teaneck Gardens, which had about six years to run when Maurice left and four years when Sidney and Leonard separated. The values attributable to the alleged oral contracts with Business Center and Section 1 depend upon whether they are established in law and fact on the remand.
After the capital values of plaintiffs' respective interests in the partnership as of the dates of dissolution are fixed, each of them will become entitled to lawful interest thereon, R.S. 42:1-42 (unless some good reason in law and fact appears to the contrary) or, at his option, "in lieu of interest, [to] the profits attributable to the use of his right in the *57 property of the dissolved partnership." Ibid. As to the dependence of the latter option upon a finding of the consent of the retiring partner to the continuation of the business, see Blut v. Katz, 13 N.J. 374, 379-381 (1953). And concerning the importance in that regard of the factor of the personal attention of the partners in producing the profits see the case cited; Laterra v. Laterra, 134 N.J. Eq. 162, 164 (E. & A. 1943); and Phillips v. Reeder and Prior, 18 N.J. Eq. 95, 100 (Ch. 1866). We refrain from any more definitive expressions as to these subjects as they were not briefed or argued on the appeal and are not entirely free from difficulty. Proper application of these or any other pertinent authorities will depend upon the specific proofs forthcoming upon the remand, in the light of those already of record.
The judgment for participation in the profits of Sarner Management Co. is reversed.

III.
There remains for consideration the validity of the appointment of a receiver. This part of the judgment was stayed pending appeal. In the opinion originally filed by the trial judge the appointment is explained solely on the basis that "it is evident that no attempt would be made to realize on the judgment if Sidney Sarner were left in control * * *." However, all the court had to do to enforce payment was to direct Sarner as defendant to pay the judgment, since refusal (in this equity case) would have constituted a contempt. Moreover, we are informed that Sarner has already caused the judgment to be satisfied by transfers of credits and cash to the creditor corporations. But whether the latter representation is or is not a fact, we regard the circumstances here presented as not having warranted the appointment of a receiver for purposes of collection of the judgment. Sarner offered during the trial fully to secure the corporations for the full amount of the *58 obligations asserted. Having in mind the court's power to enforce compliance with the judgment, referred to above, and the defendant's obvious financial responsibility, we consider the receivership not to have been necessary for the purpose indicated and the order therefor a mistaken exercise of discretion in that regard.
By supplemental opinion, prepared at the request of plaintiffs during the pendency of a motion before this court to stay the receivership pending appeal, the trial court stressed that there were rental vacancies to the extent of $58,990.88 in one of the corporate properties and of $15,775 in another during the year ending August 31, 1957; and it stated that the consequent reduction of rental income had prevented the companies from servicing debts and paying salaries and that continuation of control of management by Sidney Sarner would result in "additional loss to the corporations," wherefore the authority of the receiver was extended to the management and operation of the business properties.
It is to be remarked, however, that the receivership in respect to management of the properties is not limited by the judgment as to time or condition, although it is inferable that the court intended it to continue only for the period of the accounting directed to be made by Sarner Management Co. for plaintiffs' interests in the profits of that concern. But it is apparent that the litigation in the latter respect was separate and distinct from the stockholders' action on behalf of the corporations. Insofar as the latter was concerned the money judgment was a final disposition of the action. There was no later remedial relief demanded or in prospect in that aspect of the action in connection with which it might have been considered appropriate for the court to order a custodial receivership pendente lite. See Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580, 585-586, 596 (E. & A. 1932); Smith v. Washington Casualty Ins. Co., 110 N.J. Eq. 122, 136-137 (Ch. 1932); Hollander v. Breeze Corporations, Inc., 131 N.J. Eq. 585, 611-612 (Ch. 1941).
*59 Although plaintiffs' brief cites the statute for appointment of corporate receivers, R.S. 14:14-3, as amended, as justification for the present receivership, there is no foundation in the complaint, pretrial order, findings of the court or judgment for the notion that the action was ever conceived of or found to be one for a statutory receivership grounded in the insolvency of the corporations or the hypothesis that their businesses were "being conducted at a great loss and greatly prejudicial to the interest of [their] creditors or stockholders," within the meaning of the statute.
"Supreme caution" is always to be exercised in the appointment of a corporate receiver, and "imposing and persuasive supporting proof" required therefor, whether the proceedings look to liquidation or involve custodianship under the inherent equity jurisdiction of the court. Neff v. Progress Building Materials Co., 139 N.J. Eq. 356, 357 (Ch. 1947); and see Hinchliffe v. National Dyeing, etc., Co., 126 N.J. Eq. 386, 390 (Ch. 1939); Argalas v. Frank Theiss Co., 115 N.J. Eq. 561 (E. & A. 1934); Laurel Springs Land Co. v. Fougeray, 50 N.J. Eq. 756 (E. & A. 1893). Certainly the appointment of a corporate receiver is never an appropriate end of any litigation in and of itself. It is only a means to an end to be accomplished by the litigation. Rothman v. Harmyl Inn, Inc., 61 N.J. Super. 74 (App. Div. 1960).
Thus it would appear, prima facie, that the receivership here ordered cannot be properly subsumed under general concepts governing either statutory or general equity receiverships over corporations.
Aside from jurisdictional deficiencies, considerations of policy in respect to judicial supervision of corporations militated against a receivership here. The defendant explained the rental vacancies on the basis that the commercial premises involved call for long-term leasing and that he had in process of preparation a new nearby housing project which would enable the corporations to realize substantially higher rentals. He further testified that the note obligations currently *60 not being met by the corporations had been extended. (Indeed they were owing only to the Section corporations, in which the present parties are the sole stockholders.)
Courts will not interfere with the internal government of business corporations where there are honest differences of opinion concerning management between different factions in interest. Edison v. Edison United Phonograph Co., 52 N.J. Eq. 620, 626-627 (Ch. 1894); Appleton v. Worne Plastics Corp., 140 N.J. Eq. 324, 337 (Ch. 1947). The evidence did not justify a conclusion that in his management policies Sidney Sarner was not acting in good faith and exercising his best judgment. After all, it should not lightly be inferred that he would resort in bad faith to the wrecking of business corporations in which he has an 80% proprietorship interest.
It may be noted that plaintiffs always have had a majority vote of the board of directors of the corporations and therefore the legal power, if they chose to assert it, to effectuate different management policies from those of defendant. They have that power even now, as majority directors, at least so long as they hold office as such. They contend, however, that they have not been able to assert themselves because of Sidney's domination of them and of the affairs of the corporations. But this is obviously a consequence of the fact that it was his business ability and acumen that have been responsible for the success of the corporations and that plaintiffs have chosen until recently to let him run the business so that they might thereby share in the affluence he has brought to it. Short of a showing of such fraud, dishonesty or incompetency as would disqualify an officer or director from serving a corporation, see Hollander v. Breeze Corporations, Inc., supra (131 N.J. Eq., at page 612), the court will not interpose a receiver between the stockholders and the directorate to conduct the ordinary business affairs of the corporation. No such showing has here been made out. It may be that a continuation long enough of a serious rental vacancy situation would, upon *61 proper pleadings and adequate proofs, cause a court to give serious consideration to the necessity for removal of Sidney from further corporate responsibility, under the Hollander case, supra. But we do not have such a situation before us on this record.

IV.
We have remaining for consideration defendant Sarner's appeal from the allowance by the court as a charge against the corporations of a $3,000 fee for the services of an independent accountant previously ordered by the court to examine the books of the corporations and Sarner Management Co. We conclude it was proper to order this work for purposes of discovery in the action. Sarner has not shown the amount allowed to be excessive. On his cross-examination of the accountant it was agreed by the parties and court that the accountant would supply an affidavit showing the time spent in the work, after which he might be further cross-examined. The record before us does not show any such affidavit or cross-examination. Since it is defendant Sarner who is appealing the allowance and he affords us no explanation, we must presume that he abandoned the proffered opportunity for further attack on the amount of the allowance. No error is demonstrated by defendant either in the incidence or the amount of the allowance.
The judgment is affirmed as to the allowance of accountant's fee and as to the money awards in favor of the corporations and against Sidney Sarner, trading as Sarner Management Co. Should it be deemed desirable for purposes of enforcement, the judgment may be amplified to order Sidney Sarner to make the payments adjudicated. The judgment is reversed in respect of the accounting of profits of Sarner Management Co. and the cause remanded for further proceedings in respect of plaintiffs' interests in that partnership in conformity with this opinion. The appointment of a receiver is reversed. No costs.