NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0922-16T3

JERRY ALLOCO, EDWARD SHALVEY
and JOHN O'GRADY,

     Plaintiffs-Appellants,

v.

OCEAN BEACH AND BAY CLUB, a New
Jersey Corporation,

     Defendant-Respondent,

and

OCEAN BEACH PEARL, LLC, a New
Jersey Limited Liability Company,

     Defendant.

---

**APPROVED FOR PUBLICATION**

**August 22, 2018**

**APPELLATE DIVISION**

---

Argued January 30, 2018 — Decided August 22, 2018

Before Judges Yannotti, Leone, and Mawla.

On appeal from Superior Court of New Jersey,
Chancery Division, Ocean County, Docket No.
C-000015-14.

Louis M. Flora argued the cause for appellants
(Giblin & Gannaio, attorneys; Louis M. Flora
and Brian T. Giblin, on the briefs).

Gregg S. Sodini argued the cause for
respondent (Cutolo Barros, LLC, and Law Office
of Steven J. Tegrar, attorneys; Gregg S.
Sodini and Andrew Stein, of counsel and on the
brief; Patricia M. Greeley, on the brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Plaintiffs Jerry Alloco, Edward Shalvey, and John O'Grady challenge the trial court's September 16, 2016 order denying their motion for summary judgment and granting summary judgment to defendant Ocean Beach and Bay Club ("Club"). We affirm.

I.

The following facts are undisputed. The Club, a New Jersey not-for-profit corporation, was established to operate a community consisting of approximately 986 lots individually owned by members, with common areas including a clubhouse. The Club leases a bay beach and an ocean beach from the original developer, defendant Ocean Beach Pearl, LLC. Plaintiffs own homes in the Club's community.

The Club was established in the 1950s, with the filing of a map and deed by the Ocean Beach Corporation. The Club's certificate of incorporation gave the Club the broad mandate "[t]o promote and protect the general welfare and property rights of the property owner members in the use and enjoyment of their property at" the Club. The deed established a community scheme through building restrictions which, among other things, provided that "no[] more than one residence nor more than [a] one-story one-family dwelling shall be allowed on any lot," and imposed setback

requirements. The deed allowed the Club to adopt rules and regulations concerning the construction and modification of homes in the community.

The deed and bylaws require every resident to be a member of the Club. The members elect the Board of Trustees (Board). The Board manages the Club and is empowered to establish and change the rules and the regulations as needed.

Superstorm Sandy damaged or destroyed many homes in the Club's community, including plaintiffs' homes. As a result, in October 2014, March 2015, and November 2015, the Board enacted rule changes and clarified and expanded building requirements connected with flood zone compliance. Although these post-Sandy rule changes allowed members to elevate their homes, Alloco was denied permission to elevate his home even higher to allow the space beneath the elevated structure to be used for parking.

In January 2014, plaintiffs filed a complaint in the trial court. The second amended complaint contains four counts. In count one, plaintiffs sought a declaratory judgment regarding the obligation to reconstruct damaged properties. In count two, plaintiffs sought declaratory and injunctive relief regarding the enforcement and scope of the Club's restrictions and regulations, and the approvals of applications for development.

Count three alleged that the Board violated the business judgment rule by adopting and enforcing its rules and regulations. In particular, plaintiffs alleged the "Club acted incompetently in devising regulations limiting the height of structures." They also claimed the Club engaged in self-dealing and breached its fiduciary duties to the members. Count four alleged the Club failed to comply with the Club's certificate of incorporation, violated public policy, and violated the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 to 16-2. Plaintiffs sought declaratory and injunctive relief, counsel fees, and costs.

The claims in count one and most of the claims in count two were resolved.[1] Plaintiffs filed a motion for summary judgment with respect to counts three and four of their complaint. The Club filed a cross-motion for summary judgment.

On September 16, 2016, the trial court, citing the business judgment rule, denied plaintiffs' motion for summary judgment, granted the Club's motion for summary judgment, and dismissed the complaint. Plaintiffs appeal.

---

[1] The parties agreed any unresolved claims in count two could be addressed in consideration of the claims asserted in counts three and four.

## II.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "[T]he court must accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom[.]" Id. at 535 (citation omitted).

Appellate courts "review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We must hew to that standard of review.

A-0922-16T3

III.

Plaintiffs argue that the decisions of the Board should not be protected from judicial scrutiny by the business judgment rule. We disagree.

The business judgment rule applies to "common interest communities" such as the Club. <u>Comm. for a Better Twin Rivers v. Twin Rivers Homeowners' Ass'n</u>, 192 N.J. 344, 369 (2007). Courts have "uniformly invoked the business judgment rule in cases involving homeowners' associations," because "a homeowners' association's governing body has 'a fiduciary relationship to the unit owners, comparable to the obligation that a board of directors of a corporation owes to its stockholders.'" <u>Ibid.</u> (quoting <u>Siller v. Hartz Mountain Assocs.</u>, 93 N.J. 370, 382 (1983)). Similarly, "decisions made by a condominium association board should be reviewed by a court using the same business judgment rule which governs the decisions made by other types of corporate directors." <u>Walker v. Briarwood Condo Ass'n</u>, 274 N.J. Super. 422, 426 (App. Div. 1994).

As our Supreme Court has reiterated:

> The business judgment rule has its roots in corporate law as a means of shielding internal business decisions from second-guessing by the courts. Under the rule, when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability from actions

A-0922-16T3

brought by others who have an interest in the business entity. The business judgment rule generally asks (1) whether the actions were authorized by statute or by charter, and if so, (2) whether the action is fraudulent, self-dealing or unconscionable.

[Seidman v. Clifton Sav. Bank, 205 N.J. 150, 175 (2011) (quoting Green Party v. Hartz Mountain Indus., 164 N.J. 127, 147-48 (2000)).]

Similarly, "[p]ursuant to the business judgment rule, a [common-interest] association's rules and regulations will [only] be invalidated (1) if they are not authorized by statute or by the bylaws or master deed, or (2) if the association's actions are 'fraudulent, self-dealing or unconscionable.'" Twin Rivers, 192 N.J. at 369.

The rules and regulations challenged here meet the first prong of the business judgment rule. The Club bylaws state: "The control and complete management of the Club shall be entrusted to the duly elected Trustees, who shall make any and all rules and regulations and enforce compliance therewith, as well as these By-Laws and the Deed Restrictions." Thus, the Board is empowered by the Club's bylaws to adopt and amend the Club's rules and regulations.

Under the second prong, to "'promote and protect the full and free exercise of the power of management given to the directors,'" the business judgment rule "'protects a board of directors from

being questioned or second-guessed on conduct of corporate affairs, except in instances of fraud, self-dealing, or unconscionable conduct.'" In re PSE & G S'holder Litig., 173 N.J. 258, 276-77 (2002) (quoting Maul v. Kirkman, 270 N.J. Super. 596, 614 (App. Div. 1994)).

The business judgment rule creates "a rebuttable presumption" that the actions of a Board are valid. Id. at 277 (quoting Maul, 270 N.J. Super. at 614).

> It places an initial burden on the person who challenges a corporate decision to demonstrate the decision-maker's "self-dealing or other disabling factor." If a challenger sustains that initial burden, then the "presumption of the rule is rebutted, and the burden of proof shifts to the defendant or defendants to show that the transaction was, in fact, fair to the corporation."
>
> [Ibid. (citations omitted).]

The evidence proffered by plaintiffs was insufficient to rebut the presumption of validity and carry their initial burden of showing the Board's actions were fraudulent, self-dealing, or unconscionable. Plaintiffs did not claim fraud or unconscionability. Rather, they argued the Board engaged in self-dealing because it failed to uniformly enforce rules and restrictions. However, plaintiffs' claims are unsubstantiated and unrelated to the Board's actions, such as the height limitations that plaintiffs challenge in this litigation.

First, plaintiffs asserted Board President John Houseworth and the Board were aware that fellow Board member Joseph Bruno violated the Club's rule that "construction in progress must cease on June 15th" "until after Labor Day," but did nothing about it, and did not include Bruno as a defendant in the Club's lawsuit to stop violations of the summer construction ban. However, Houseworth testified at his deposition he was only aware that Bruno was "fixing windows." Plaintiffs cited the deposition testimony of a former Club security guard that while on patrol he observed and reported the construction activity at Bruno's property. However, the security guard was not aware whether or not Bruno had obtained a hardship waiver from the Club that would have made the reported construction permissible.

Second, plaintiffs alleged that the house of a former Board member, James Freehan, violated the setback requirement. However, Houseworth testified only that he had "no recollection as to whether or not this has ever been investigated." Plaintiffs proffered no evidence that such a violation had occurred, had been brought to the Board's attention, or that non-Board members were investigated for similar building violations.

Third, plaintiffs alleged that Houseworth engaged in self-dealing because he paid $2200 for the demolition of his house that was damaged in Superstorm Sandy. Plaintiffs noted the Board had

9

awarded a demolition company a contract to perform the demolitions at the Club for $4000 per home. However, Houseworth certified that the reduced rate was the result of bargain struck between Houseworth and the demolition company that allowed the company to keep all the possessions and fixtures within the home. Plaintiffs presented no contrary evidence.

Fourth, plaintiffs claimed self-dealing because Houseworth's outdoor deck was approved even though the Club's deed restriction provides that no "structure of any kind shall be erected closer than 35 feet to the Oceanfront side." However, Houseworth testified that the building approval process was handled in a separate committee, not by the Board, and that he was unaware how the committee defined "structure." Plaintiffs failed to show that the "structure" rule is being applied differently to members who are not on the Board. Moreover, a suit challenging Houseworth's deck was dismissed with prejudice.

Fifth, plaintiffs argued Board members did not pay Club dues. However, Houseworth testified that he was aware of Board members not paying dues prior to his becoming Board president in January 2013, but he immediately put a stop to that practice.

As the trial court noted, none of these alleged acts of self-dealing have any nexus to the rule changes plaintiffs are challenging. To overcome the business judgment rule, a plaintiff

A-0922-16T3

must show that "the challenged [] actions" constitute "impermissible self-dealing." Seidman, 205 N.J. at 177. Here, there was "no indication that the . . . Board has benefited by the" challenged rule changes. Owners of the Manor Homes of Whittingham v. Whittingham Homeowners Ass'n, 367 N.J. Super. 314, 323 (App. Div. 2004) (finding no "self-dealing in the Board's action"). Allegations of self-dealing in unrelated matters are insufficient. In re Prudential Ins. Co. Derivative Litig., 282 N.J. Super. 256, 281 (Ch. Div. 1995); see also PSE & G, 173 N.J. at 278-82 (citing Prudential with approval). In any event, plaintiffs failed to proffer evidence showing self-dealing even in those other matters.

IV.

Plaintiffs also argue that the Board and its rules are incompetent. However, showing Board members or their rules were incompetent does not show that they were "fraudulent, self-dealing, or unconscionable," as required by our Supreme Court. Seidman, 205 N.J. at 175 (quoting Green Party, 164 N.J. at 147); accord Twin Rivers, 192 N.J. at 369; see PSE & G, 173 N.J. at 276-77 (requiring "[f]raud, self-dealing or unconscionable conduct"); accord Thanasoulis v. Winston Towers 200 Assoc., 110 N.J. 650, 657 (1988); Siller, 93 N.J. at 382.

     A-0922-16T3

Plaintiffs cite a Chancery Division decision, <u>Papalexiou v. Tower W. Condo.</u>, 167 N.J. Super. 516 (Ch. Div. 1979), which stated that "[c]ourts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence." <u>Id.</u> at 527 (citing <u>Sarner v. Sarner</u>, 62 N.J. Super. 41, 60 (App. Div. 1960)). However, the chancery court preceded this statement by properly stating that the business judgment rule

> requires the presence of fraud or lack of good faith in the conduct of a corporation's internal affairs before the decisions of a board of directors can be questioned. If the corporate directors' conduct is authorized, a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review. . . . All that is required is that persons in such positions act reasonably and in good faith in carrying out their duties.
>
> [<u>Ibid.</u>]

Thus, it appears the chancery court was attempting to state the business judgment rule, not change it to an incompetence standard.

Moreover, the chancery court mistakenly cited <u>Sarner</u>'s language addressing, not the business judgment rule, but the requirements for imposition of a receiver: "Short of a showing of such fraud, dishonesty or incompetency as would disqualify an officer or director from serving a corporation, the court will not interpose a receiver between the stockholders and the directorate

to conduct the ordinary business affairs of the corporation." Id. at 60 (citation omitted). Even if incompetence is relevant to appointing a receiver, it does not constitute fraud, self-dealing, or unconscionability.[2]

We have cited that language from Papalexiou and Sarner only in cases where we did not apply the business judgment rule, and thus those citations were dicta. Mulligan v. Panther Valley Prop. Owners Ass'n, 337 N.J. Super. 293, 300, 303 (App. Div. 2001) (holding that the business judgment rule does not apply to amendments passed by the membership as a whole); Grato v. Grato, 272 N.J. Super. 140, 150-51 (App. Div. 1994) (not reaching whether the business judgment rule applies to closely-held corporations). Our Supreme Court has cited Papalexiou only as stating that "[f]raud, self-dealing or unconscionable conduct at the very least should be subject to exposure and relief." Siller, 93 N.J. at 382 (citing Papalexiou, 167 N.J. Super. at 527). We must continue to follow the Supreme Court's lead and require a showing of fraud, self-dealing or unconscionable conduct. Ibid.; accord, e.g.,

---

[2] Sarner did not mention the business judgment rule, save to state that "[c]ourts will not interfere with the internal government of business corporations where there are honest differences of opinion concerning management between different factions in interest." 62 N.J. Super. at 60. See Green Party, 164 N.J. at 147 (citing Sarner, 62 N.J. Super. at 60).

Whittingham, 367 N.J. Super. at 322; Walker, 274 N.J. Super. at 426.

Plaintiffs also argue the Board's decisions are arbitrary. The Court has remarked that "the business judgment rule protects common interest community residents from arbitrary decision-making." Twin Rivers, 192 N.J. at 369. However, the rule does so by invalidating regulations "(1) if they are not authorized by statute or by the bylaws or master deed, or (2) if the association's actions are 'fraudulent, self-dealing or unconscionable.'" Ibid. (citation omitted). "If a challenger sustains that initial burden," then courts can consider whether the regulation was "'fair to the corporation.'" PSE & G, 173 N.J. at 277 (citation omitted).

Our Supreme Court has "reject[ed] plaintiffs' invitation to limit the scope of the business judgment rule." Seidman, 205 N.J. at 155. We similarly reject plaintiffs' efforts to evade the requirement that they show fraud, self-dealing, or unconscionable conduct. "'The business judgment rule bars judicial inquiry into the decisions of the board of directors made in good faith'" and within "'the limits of the by-laws.'" Reilly v. Riviera Towers Corp., 310 N.J. Super. 265, 270 n.4 (App. Div. 1998) (citation omitted). The Board's decision "'should not be tampered with by the judiciary so long as the decision is one within the power

14

delegated to the directors and there is no showing of bad faith.'" PSE & G, 173 N.J. at 277 (citation omitted). "[B]ad judgment, without bad faith, does not ordinarily make officers individually liable." Maul, 270 N.J. Super. at 614.

In any event, plaintiffs failed to show that the Board's regulations were arbitrary or incompetent. As the trial court noted, the challenged rule changes do not appear arbitrary, but rather appear to be "a proper exercise of authority designed to maintain the property rights of members."

Plaintiffs claim the Board was incompetent because it promulgated rules and regulations without "expert guidance." Plaintiff cites Houseworth's statements that "I'm not a construction expert," and "I'm not well versed as a construction consultant or surveyor," and that he did not "know anything about construction" and was "not familiar with" the Toms River building code." Plaintiffs also cite deposition testimony from Board vice-president Ken Levine in which he agreed he had not studied engineering or construction, had no "experience in construction," and had not studied "FEMA or flood regulations."

However, the business judgment rule does not require Board members to be construction experts. The members of the Board are an elected group of residents tasked with maintaining, through enforcement and adaptation, a community scheme established by the

founders.  They are protected if they make their decision "in good faith based on reasonable business knowledge."  Seidman, 205 N.J. at 175 (quoting Green Party, 164 N.J. at 147).

Moreover, the Club offered a report written by their expert Gordon Gemma, a licensed professional planner, in support of their cross-motion for summary judgment.  Gemma reviewed the deed restrictions, bylaws, the certificate of incorporation, and the Club rules adopted by the Board since Superstorm Sandy.  He concluded that the Club's rules were "justified as promoting and protecting the health, safety, general welfare and property rights of the property owners" and "a valid exercise of the purposes of the" Club.

Houseworth certified that the Board implemented all of Gemma's recommendations, which included allowing additional storage space under houses, allowing additional height for construction in flood zones, and relaxing restrictions on stairs, stair platforms, and decks.  Following Gemma's recommendations, the Club also retained a professional planner to review all construction applications.  Plaintiffs submitted no contrary evidence or expert report.

The Board adopted the post-Sandy rules before Gemma was retained. Nonetheless, his finding that the rules were "justified" and "valid" rebutted the claim that the rules were incompetent or

16                                              A-0922-16T3

arbitrary. Moreover, the Board's implementation of Gemma's recommendations demonstrated good faith.

Plaintiffs argue that Gemma's report should have been rejected as a net opinion. Courts review "'a trial court's decision to admit expert testimony'" on summary judgment under "'an abuse of discretion standard.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (citation omitted).

The net opinion rule dictates "an expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). Accordingly, "the net opinion rule 'requires an expert to give the why and wherefore of his or her opinion, rather than a mere conclusion.'" State v. Townsend, 186 N.J. 473, 494 (2006) (citation omitted).

Our Supreme Court recently stated "[t]he net opinion rule is not a standard of perfection. The rule does not mandate that an expert organize or support an opinion in a particular manner that opposing counsel deems preferable." Townsend v. Pierre, 221 N.J. at 54 (citation omitted). "An expert's conclusions should not be excluded merely '"because it fails to account for some particular condition or fact which the adversary considers relevant."'" Ibid. (citation omitted). "The expert's failure 'to give weight

17

to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion.'"  Ibid. (citation omitted).

Plaintiffs assert Gemma's report was a net opinion because he failed to examine minutes of Board meetings, interview Board members, visit the site, or review the discovery in this litigation.  However, such inquiries were not needed.  Gemma's April 14, 2016 report states that he examined: (a) the restrictions set forth in the 1954 Deed; (b) the certificate of incorporation, bylaws, and rules reprinted June 2005; (c) rule changes dated October 2013; (d) rule changes dated October 2014; (e) rule changes dated March 2015; and (f) rule changes dated November 2015.

Gemma concluded, "in [his] opinion as a professional planner," based on "the Club's history of regulations as well as the process to implement" them, "that the Rules as originally adopted and which have been imposed since creation of the Club remain a valid exercise of the purposes of the Association," that "the Club may continue to adopt and enforce land use and other restrictions that promote and protect the general welfare and property rights of the property owners," and that certain rule amendments should be adopted.  To reach those conclusions, it was unnecessary to review minutes or discovery, interview Board

members, or visit the site; review of the governing documents and the rules and rule changes was sufficient. Thus, Gemma's report contains the factual basis for his conclusions and recommendations.

Plaintiffs argue Gemma applied a personal standard. "'A standard which is personal to the expert is equivalent to a net opinion.'" Pomerantz Paper, 207 N.J. at 373 (citation omitted). However, Gemma not only referred to the documents governing the Club but also reviewed New Jersey case law relevant to the enforceability of private restrictive covenants in the context of a community scheme. Gemma also referenced FEMA requirements. Experts can rely on legal standards pertinent to their profession. Costantino v. Ventriglia, 324 N.J. Super. 437, 448 (App. Div. 1999); see Davis v. Brickman Landscaping, 219 N.J. 395, 412 (2014)

We cannot say the trial court abused its discretion in considering the report. Considering the Club's governing documents and its regulations in light of those standards was an appropriate topic for a professional planner, and not a "common knowledge" topic a lay person could address.

V.

Plaintiff also argues that the Board made procedural errors. However, showing an error, particularly unrelated errors, does not show the Board's challenged actions were "'fraudulent, self-

19

dealing or unconscionable.'" <u>Seidman</u>, 205 N.J. at 175 (citation omitted).

First, plaintiffs argue that the Board secretary failed to print and send the members notice of changes in rules and regulations "no later than 30 days after the same has been enacted," as mandated by the Club's bylaws. Plaintiffs cite Houseworth's deposition where he stated that circulation was delayed "[b]ecause it's a volunteer job, and some people lack urgency." However, Houseworth's candid response did not show bad faith on the part of the Board, especially in light of his testimony that he was presently addressing the issue. Moreover, Levine testified that although the rule changes were not initially mailed, they were "communicated via email blasts and posting on the website." Plaintiffs did not challenge that the rule changes were published electronically in a timely fashion.

Second, plaintiffs claimed the Board tried to stifle dissent through an amendment to the Club's bylaws provided that a Board member who institutes litigation against the Club is suspended from the Board during the litigation. However, the amendment to the bylaws was adopted by the membership of the Club, not the Board. Plaintiffs have not shown the members' action was impermissible, let alone that it showed bad faith by the Board.

Third, plaintiffs argue that the Board violated the New Jersey Planned Real Estate Development Full Disclosure Act (PREDFDA), N.J.S.A. 45:22A-21 to -56, by failing to offer alternative dispute resolution (ADR). However, the Board adopted a resolution offering ADR on June 4, 2016.

Finally, plaintiffs note "[t]he PREDFDA statute provides additional protections." A 1993 amendment to PREDFDA added that: "The bylaws of the association, which shall initially be recorded with the master deed shall include . . . [a] requirement that all meetings of the executive board, except conference or working sessions at which no binding votes are to be taken, shall be open to attendance by all association members[.]" N.J.S.A. 45:22A-46, -46(a). Plaintiffs argue they were not "permitted to attend board meetings, where the rules were adopted."

However, plaintiffs raised no such claim in their complaint. Their statement of material facts and Alloco's certification alleged the Board never permitted members to be present when it voted on rules concerning construction until the June 4, 2016 meeting, but there is no mention of that claim or PREDFDA in their oral argument to the trial court on summary judgment. The court's opinion does not mention that claim.

It is well-settled that New Jersey "appellate courts will decline to consider questions or issues not properly presented to

the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). That is not the case here.

We recognize that we do not have plaintiffs' summary judgment brief in the trial court. See R. 2:6-1(a)(2). If in that brief, plaintiffs raised a claim that the Club violated PREDFDA by not allowing members to attend Board meetings where the challenged rules were adopted, our affirmance is without prejudice to plaintiffs seeking an adjudication of that claim in the trial court.

Plaintiffs' remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We need not address the Club's arguments that plaintiffs are barred from raising several of their claims because courts have rejected them in other proceedings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22                                    A-0922-16T3