# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0331-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEVEN R. DONALDSON,

    Defendant-Appellant.

_____

> Submitted February 14, 2024 – Decided August 28, 2024
>
> Before Judges Vernoia, Gummer, and Walcott-Henderson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-10-1344.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Amira R. Scurato, Designated Counsel, on the brief).
>
> LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Steven R. Donaldson of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), as a lesser included offense of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The child was the one-year-old niece of his then-girlfriend. She died from blunt head trauma she had suffered while in defendant's care. We affirmed defendant's conviction and twenty-year sentence on his direct appeal, State v. Donaldson, No. A-2865-15 (App. Div. Apr. 1, 2019), and the Supreme Court denied his petition for certification, State v. Donaldson, 240 N.J. 21 (2019). Defendant appeals from an order denying his post-conviction relief (PCR) petition, which was decided without an evidentiary hearing. He claims his pretrial and trial counsel had provided ineffective assistance of counsel. Unpersuaded by his arguments, we affirm.

Defendant was alone with the child and twin toddlers he shared with his girlfriend when the injury occurred. He called 9-1-1 and reported the child was not breathing. Following the instructions of the 9-1-1 operator, defendant performed CPR on the child, compressing her chest and breathing into her mouth. She did not have a pulse and was not breathing when police and emergency medical personnel arrived and was pronounced dead at a hospital

about an hour after defendant's 9-1-1 call. An autopsy conducted the next day revealed she had died from blunt trauma to the head.

After the child was taken by ambulance to a hospital, a police sergeant drove defendant to the police station, where he waived his Miranda rights[1] and was questioned. Defendant gave varying accounts of what had happened that day, first stating the child had been asleep in her crib the entire time he was with her, then stating he had changed her clothes at some point, and finally stating she had fallen while trying to stand up. Before defendant left the station, a police sergeant, who earlier had told defendant the child was "ok," informed him she had died.

Two days later, defendant returned to the police station with an attorney he had retained and spoke to the police again. He told a different version of what had occurred: after he had picked the child up to change her diaper, she pushed off him, slipped out of his grip, fell, and hit her head on the hardwood floor. Defendant relayed that version to jurors when he testified at trial.

Defendant concedes the cause of death – blunt force trauma – was not contested at trial, only the manner of death. The State presented twenty-two witnesses in its case-in-chief at trial. The doctor who performed the autopsy

---

[1] Miranda v. Ariz., 384 U.S. 436 (1966).

testified, opining the child could not have merely "fall[en] off a shoulder onto the floor" but instead must "have slammed into something."  He described her injuries, including "a long gaping linear fracture" on her head, and concluded the bruising on her body indicated blunt force.

The State also called as an expert witness a neuropathologist who had examined the child's body.  She told jurors the child, given the nature of her injuries, could not "have obtained [her] injuries from a five-foot fall."  She also testified she had performed tests that showed the child died very soon after impact, which is indicative of blunt trauma.  The State also called as a witness a professor of bioengineering and pediatrics.  She had tested in a computer simulation the fall described by defendant and found it "very difficult to imagine" a short-distance fall, such as one from four or five feet as defendant had described, could have caused the child's injuries.

In his testimony, defendant explained he had lied during his first statement to police but had told the truth in his second statement.  He presented three expert witnesses – a forensic pathologist, a neuropathologist, and a biomechanical engineer – who opined defendant's description of the fall was a plausible explanation of the child's manner of death.  However, the forensic pathologist conceded falls from short distances rarely caused death in children.

A-0331-22

A grand jury had returned a two-count indictment charging defendant with first-degree purposeful or knowing murder, N.J.S.A. 2C:11-3(a)(1) or 2C:11-3(a)(2), and second-degree endangering welfare of a child, N.J.S.A. 2C:24-4(a). The jury, however, convicted him of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), as a lesser included offense of first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).

After our affirmance of defendant's convictions and sentence on his direct appeal and the Supreme Court's denial of his petition for certification, defendant timely filed a pro se PCR petition. He asserted his trial counsel had been ineffective in not cross-examining the State's neuropathology expert witness. Defendant's appointed PCR counsel submitted a brief in support of defendant's petition, raising three additional arguments: defendant's trial counsel had been ineffective in failing to object to preliminary jury instructions that were purportedly lacking or misleading; defendant's pretrial counsel was ineffective in allowing defendant to give a second statement to police with no evidence or transcript of the first statement and without having conducted an investigation; and during the first meeting at the police station, police lied to defendant about

A-0331-22

the child's condition. PCR counsel asked for an evidentiary hearing and an order setting aside the conviction.

After hearing argument, the PCR judge entered an order and written opinion denying the petition based on his finding defendant had failed to sustain his burden of establishing his claims under the two-pronged standard established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by our Supreme Court for application under the New Jersey Constitution in State v. Fritz, 105 N.J. 42 (1987). This appeal followed.

In his brief, defendant presents the following arguments for our consideration:

> POINT I
>
> BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE FROM BOTH PRETRIAL AND TRIAL COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR RELIEF.
>
> (A) Legal Standards Governing Applications For Post-Conviction Relief.
>
> (B) Counsel Below Were Ineffective.
>
>> (1) The first defense attorney was ineffective when he allowed defendant to speak to the police a second time without first reviewing the evidence, including the first statement and the cause of death, and the recent decision in State v.

6

Young [474 N.J. Super. 507 (App. Div. 2023), certif. denied, 254 N.J. 63 (2023)] was wrongly decided on this issue.[2]

(2) The Court failed to properly instruct the jury and defense trial counsel was ineffective for failing to challenge the errors.

(3) Counsel did not provide zealous representation at trial, to defendant's detriment.

Defendant also faults the PCR judge for not addressing defendant's argument about the police purportedly lying to him during the first meeting.

In the absence of an evidentiary hearing, we review de novo both the factual inferences drawn from the record by the PCR judge and the judge's legal conclusions. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020). We review a PCR judge's decision to deny a defendant's request for an evidentiary hearing under an abuse-of-discretion standard. See State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee defendants in a criminal

---

[2]  We do not address defendant's argument regarding that case because we consider substantively, for purposes of this appeal, his ineffective-assistance claim regarding his pretrial counsel and because the case is unpublished. See R. 1:36-3 ("[n]o unpublished opinion shall constitute precedent or be binding upon any court").

proceeding the right to the assistance of counsel in their defense. The right to counsel requires "the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland, 466 U.S. at 686).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 58 (adopting the Strickland two-pronged analysis). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688, 694). "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012). A failure to satisfy either prong of the Strickland test requires the denial of a PCR petition. Strickland, 466 U.S. at 700; Nash, 212 N.J. at 542.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts must make "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689; see also Nash, 212 N.J. at 542.

The second prong of the Strickland test requires a defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. A defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

Defendant argues the PCR judge erred in denying his claim that his pretrial counsel had been ineffective in allowing him to speak with the police a second time "without first reviewing the evidence, including the first statement and the cause of death." Defendant, however, does not articulate what difference that would have made. His testimony at trial about how the child was injured matched the information he provided to police during their second meeting. That version of events enabled him to present a defense supported by three expert witnesses about the manner of the child's death. His PCR petition was

not supported by a certification from him indicating his second statement or his trial testimony would have been different had he received a transcript or other evidence before he gave his second statement or that he needed a transcript to recall the statements he had made to police two days previously.

Defendant simply asserts that allowing him to participate in the second interview without first receiving a transcript or additional evidence was ineffective assistance.  But his bald assertions are not enough to establish a prima facie case of ineffective assistance.  See State v. Porter, 216 N.J. 343, 355 (2013) ("to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel" (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999))).  Without explaining, much less actually demonstrating by a reasonable probability, how not giving him before his second statement a transcript of the first statement or other evidence affected the outcome, defendant failed to meet the Strickland test.  Fritz, 105 N.J. at 58.

In his merits brief, defendant cites as another example of his attorneys' ineffectiveness defendant's inconsistent statements about his consumption of vodka the evening the child had died, his pretrial attorney's purported advice on that issue, and his trial attorney's decision to have him testify despite the

inconsistencies. However, defendant did not raise that issue before the PCR judge. We decline to consider it. See Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court); State v. Robinson, 200 N.J. 1, 19 (2009) ("The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves").

Defendant faults his trial counsel for not objecting to the preliminary instructions the judge gave jurors during the jury-selection process and when they were first impaneled after jury selection. Defendant contends the trial judge failed to follow the model jury instructions on direct and indirect evidence, proof beyond a reasonable doubt, and the role of the jury. He also argues the judge's omission of defendant from the instruction about running into counsel outside the courtroom would lead the jury to surmise defendant was incarcerated.

During jury selection, the trial judge explained the role of the jury and the nature of the charges against defendant and gave the prospective jurors some preliminary instructions. The trial judge explained the jurors must presume defendant to be innocent, the burden of proof "rested with the State and [would]

never shift[]," and the standard of proof was guilt beyond a reasonable doubt. He explained that reasonable doubt meant:

> an honest and a reasonable uncertainty in [the jurors'] mind[s] as to the guilt of defendant after [they] ha[d] carefully and impartially considered all of the evidence. A reasonable doubt may arise from the evidence presented or from a lack of evidence. It is a doubt which a reasonable person hearing the same evidence would have.

The trial judge specifically told the prospective jurors defendant's indictment "must not be considered as evidence of guilt" and explained why.

After the jurors were selected, the trial judge told them that "during the course of the trial, inevitably [they would] run across the path of" the prosecutor and defense counsel and advised the jurors that the counselors were obligated to avoid speaking with them. The trial judge did not mention potential interactions jurors could have with defendant during the trial.

The trial judge's preliminary instructions largely tracked the model instructions. See Model Jury Instructions (Criminal), "Preliminary Instructions to the Jury" (rev. Sept. 1, 2022); Model Jury Instructions (Criminal), "Reasonable Doubt" (rev. Feb. 24, 1997); Model Jury Instructions (Criminal), "Circumstantial Evidence" (rev. Jan. 11, 1993). Any deviation was immaterial. The trial judge's reasonable-doubt instructions tracked the material portion of

12

the model instructions nearly verbatim. During preliminary instructions and the instructions he gave at the end of the trial, the judge thoroughly addressed the importance of jury duty and the role of a juror. The trial judge did not specifically address situations where jurors might run into defendant during breaks in the trial but clearly advised the jurors they should not presume defendant to be guilty. The judge did not address circumstantial evidence during his preliminary instructions but covered it in the instructions he gave at the end of the case. He addressed the importance of "decid[ing] the case free of any bias" prior to jury deliberations.

Defendant's assumption about what the jurors may have surmised is belied by the judge's repeated instruction not to presume defendant to be guilty. On this record, defendant has failed to support an ineffective-assistance claim based on trial counsel not objecting to the preliminary jury instructions.

Regarding his claim trial counsel failed to zealously represent him, defendant faults trial counsel for "not challeng[ing] in any meaningful way" the testimony of the State's neuropathologist. In fact, trial counsel presented testimony from three expert witnesses and used that testimony to dispute her testimony and the State's theory of the case. On cross-examination, trial counsel attempted to question the State's neuropathologist about her role as an expert in

an Illinois case because a judge, acting as a factfinder in a related federal habeas corpus proceeding, found her opinions in that case not believable due to an error she had made. The trial judge sustained the State's objection to that line of questioning, finding "its unrelated, it's not contrary to her testimony here." Defendant faults trial counsel because, after the trial judge sustained the State's objection, he did not attempt to question the neuropathologist directly about the error she had made in the other case.

The PCR judge found it was "logical" and "reasonable trial strategy for counsel to not give the State's expert additional opportunities to further explain and elaborate on her opinions" and that "limiting the State's expert witness'[s] exposure to the judge in favor of later producing three experts who would refute the State's theory of the case was an acceptable and reasonable way to proceed." Based on his counsel's trial strategy, the jury convicted defendant of aggravated manslaughter and not knowing or purposeful murder. See Pierre, 223 N.J. at 578-79 (finding "[a]n attorney is entitled to a 'strong presumption' that he or she provided reasonably effective assistance, and a 'defendant must overcome the presumption that' the attorney's decisions followed a sound strategic approach to the case." (quoting Strickland, 466 U.S. at 689)).

We perceive no error in the PCR judge's conclusion defendant failed to overcome the presumption of sound strategy under these circumstances. Even if defendant had overcome that presumption, he did not affirmatively prove by a preponderance of the evidence that he suffered prejudice under Strickland's second prong, considering the remaining substantial factual and scientific evidence presented by the State.

Defendant faults the PCR judge for not specifically addressing his argument that during the first meeting at the police station, police lied to defendant about the child's condition. The PCR judge at the end of the opinion generally referenced defendant's "other vague or suggested arguments" and rejected them "because they are speculative, not fully presented or explained, and/or they lack merit." (Emphasis in original). That is a fair characterization of defendant's argument concerning the police's alleged lie. Defendant does not argue counsel was ineffective by failing to raise the issue at trial and does not explain how the claim, even if true, would permit or require vacatur of his conviction. And defendant makes no showing the purported lie about the status of the child during the first interview supports PCR. Nor does he explain why consideration of the issue isn't barred because he did not raise it in his direct appeal. See State v. Afandor, 151 N.J. 41, 50 (1977) (finding Rule 3:22-4

"essentially bars all grounds for PCR that could have been raised in a prior proceeding," unless one of three enumerated exceptions to the rule apply).

We discern no abuse of discretion in the PCR judge's decision to forego an evidentiary hearing. A petitioner is not automatically entitled to an evidentiary hearing. Porter, 216 N.J. at 355; see also State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (holding "[t]he mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing").

Rule 3:22-10(b) provides that a court should hold an evidentiary hearing on a PCR petition only if the defendant establishes a prima facie case in support of PCR, "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and "an evidentiary hearing is necessary to resolve the claims for relief." See also Porter, 216 N.J. at 354; Vanness, 474 N.J. Super. at 623. "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Porter, 216 N.J. at 355 (quoting R. 3:22-10(b)). Defendant did not meet that standard, and, thus, the PCR judge did not abuse his discretion by deciding the petition without holding an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16